DeWITT WEARY *et al.*, Plaintiffs-Appellees, *v.* THE BOARD OF EDUCATION, SCHOOL DISTRICT NO. 189, EAST ST. LOUIS, Defendant-Appellant.

Fifth District   No. 75-471

Opinion filed January 20, 1977.—Rehearing denied March 16, 1977.

G. MORAN, J., dissenting.

Edward Neville, of East St. Louis, for appellant.

Cohn, Carr, Korein, Kunin and Brennan, of East St. Louis (Rex Carr, of counsel), for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from the circuit court of St. Clair County where the court sitting without a jury held for the plaintiffs in an action for breach of contract.

Plaintiff DeWitt Weary is president of Local 1220 of the American Federation of Teachers, AFL-CIO, the exclusive bargaining representative for the teachers employed by defendant Board of Education School District No. 189, East St. Louis, Illinois. DeWitt Weary and the teachers union initiated the original action in this case. This appeal involves the collective bargaining agreement negotiated by the parties for the 1969-70 academic year.

During the negotiations leading to the agreement in question reliance by the parties had to be made on estimated figures in determining the funds available for salary increases. Historically teachers' salary increases equalled 65% of any increase in revenues over the preceding year. For example, if the increase in revenues was $100,000, 65% or $65,000 would be used for salary increases.

During the negotiations the defendant School Board made it known that it projected a $950,000 deficit from the 1968-69 academic year. The cause of the deficit is absent from the record. The School Board also projected an increase in State aid of $2,350,000 due to a change in the funding formula used by the State.

On June 12, 1969, an agreement was reached for the 1969-70 academic year which included the following provision:

"Article XIX-Salaries

Local 1220 and District 189 agree that $950,000.00 of any increase in state aid in the year 1969-70 shall be used to decrease the projected deficit, or liability, of the District; that 65% of the remainder of any increase in state aid shall be used as designated by Local 1220 for increased salaries and fringe benefits for persons represented by Local 1220 in accordance with a salary schedule to be submitted hereafter by Local 1220 and/or for any other budget item as designated by Local 1220.

Should the School Board fail to use said $950,000.00 for the above purpose, then the persons covered by this Agreement shall receive 65% of that part of said sum not so used as a retroactive pay increase as designated by Local 1220."

At the conclusion of the 1968-69 fiscal year, an audit of defendant's

finances was made which showed a deficit for that year to be $851,000 as opposed to the projected deficit of $950,000. During the 1969-70 academic year the defendant received an increase in State funds of $2,598,000 as opposed to the projected increased of $2,350,000. At the conclusion of the 1969-70 fiscal year an audit of defendant's finances showed the deficit to be $1,160,000. This result touched off the instant action.

Plaintiffs, as a result of the increased deficit, demanded a retroactive pay increase in accordance with the second paragraph of article XIX of the collective bargaining agreement. The School Board refused to pay the increase, contending that the projected deficit from 1968-69 was in fact decreased.

The trial court, after hearing the evidence, found:

"* * * that the defendant did not use the said sum of $950,000.00, or any part thereof, to decrease the projected deficit, or liability of the district; that the deficit, or liability, of the district increased to the sum of $1,160,104.00; that ·by reason of the failure· of the defendant to use the said $950,000.00 to decrease the projected deficit, or liability, of the district, that the persons covered by the said agreement were entitled to receive 65% of the said sum of· $950,000.00, or $617,500.00, as a retroactive pay increase for the year 1969-70 * * *."

Judgment was entered accordingly from which defendant appeals.

On appeal, defendant raises three issues: (1) whether the School Board had illegally delegated its authority and discretion through article XIX of the agreement, (2) whether there was in fact a breach of the agreement, and (3) whether the contract is void as against public policy.

We believe resolution of the first and third issues raised is dispositive of this case.

■■ Under the School Code (Ill. Rev. Stat. 1969, ch. 122, par. 1—1 *et seq.*), a school board was created to perform governmental functions in connection with the education of children in its respective school district and it has such powers as are expressly conferred or such as may be necessary to carry into effect those granted by the General Assembly. (*Wesclin Education Association v. Board of Education*, 30 Ill. App. 3d 67, 331 N.E.2d 335.) Of particular concern here is the authority of a school board to fix the salaries of teachers (Ill. Rev. Stat. 1969, ch. 122, pars. 10—20.7, 24—1) and its authority to prepare, adopt and administer an annual budget (Ill. Rev. Stat. 1969, ch. 122, par. 17—1). The duty of a school board to perform these tasks and the exercise of its discretion in so performing them is basic to its purpose of administering and managing the conduct of the schools within its district.

■■■ It is well settled that while a school board may enter into a collective bargaining agreement with an organization representing the

employees thereof, the board cannot negotiate an agreement which involves the delegation of a statutory duty or the surrender of discretion vested in the board by statute. (*Illinois Education Association v. Board of Education*, 62 Ill. 2d 127, 340 N.E.2d 7; *Wesclin Education Association v. Board of Education*, 30 Ill. App. 3d 67, 331 N.E.2d 335; *Elder v. Board of Education*, 60 Ill. App. 2d 56, 208 N.E.2d 423; *Board of Education v. Rockford Education Association*, 3 Ill. App. 3d 1090, 280 N.E.2d 286.) We find that the provision here in issue involves just such a prohibited delegation to the union of the School Board's power and discretion. Article XIX of the agreement is obnoxious in many respects. It limits to no more and no less than $950,000 of any increase in State aid as the amount the Board must apply to decrease any deficit or liability and further limits the Board's discretion in the use of this money by providing that if the money is not so used, 65% thereof must then be used as a retroactive pay increase for the teachers who were members of the union. In this respect, we here do not deal with a bargain agreed upon which requires a retroactive pay increase but in reality one which mandates the payment of the district's deficit or liability in a specific dollar amount. Thereby it precludes the Board's exercise of its discretion to apply funds not needed to meet its indebtedness to such educational purposes as it might propose.

Next the agreement provides that 65% of any excess in State aid over $950,000 shall be used, as designated by the union, for increased salaries and fringe benefits for only those represented by the union in accordance not with the Board's salary schedule but with one to be submitted by the union. The union thus is granted the Board's power and discretion to determine by what amount specific salaries will be increased and to whom increases shall be given. This portion of the agreement does not then result in establishing pay increases but instead results in a delegation to the union of the Board's duty to fix teachers' salaries. So too, the second paragraph of the agreement delegates to the union the power, should the Board not use the $950,000 in the manner provided to decrease a deficit or satisfy a liability, to designate which of the school personnel shall receive a retroactive pay increase and therefore the power to fix teachers' salaries as the union in its discretion may choose limited only by the specific dollar amount available.

■■ Of the 65% of any remainder of State aid above $950,000, the agreement also grants to the union the power to designate in its discretion that any portion thereof will be used for any specific budget item as the union sees fit. In large measure, this portion of the bargain standing alone, and particularly in combination with all other aspects of the agreement, involves the surrender to the union of the Board's power to control its budget. To the extent the agreement involves such a surrender, the Board is precluded from exercising its own discretion based on a consideration

of its public responsibilities in determining what budgetary items requires the expenditure of the funds from State aid. A school board simply cannot bargain away its power to control its budget, its power to fix the salaries of its employees, and its discretion to apply funds to the payment of deficits or to apply funds not needed to meet its indebtedness to such educational purposes as it in its discretion might propose.

Article XIX is not an agreement which properly determines the amount of salary increases to be given to the teachers for the 1969-70 academic year. Through the agreement, the union acquires in large measure the powers and duties of the School Board and concomitantly the agreement restricts the Board's exercise of those powers and duties. Consequently, the provision is void as against public policy, is unenforceable, and the judgment of the circuit court of St. Clair County is reversed.

Reversed.

JONES, J., concurs.

G. J. MORAN, J., dissents without opinion.