No. 54,558

OTTAWA EDUCATION ASSOCIATION, *Appellant,* v. UNIFIED SCHOOL DISTRICT NO. 290, *Appellee.*

(666 P.2d 680)

Opinion filed July 15, 1983.

*David M. Schauner,* of Topeka, argued the cause and was on the brief for appellant.

*Joyce Fackler Hendrix,* of Anderson, Byrd & Richeson, of Ottawa, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is a breach of contract action brought by the Ottawa Education Association (OEA) against the Board of Education of Unified School District No. 290, Ottawa, Kansas (the Board), for a declaratory judgment, temporary and permanent injunction, and mandamus. The trial court sustained the Board's motion to dismiss for failure to state a claim upon which relief can be granted; OEA appeals. The principal issue is whether certain provisions of a negotiated agreement between OEA and the Board, relating to the reduction of the teaching staff, violates any provisions of the teachers' contracts statutes, K.S.A. 72-5401 to 72-5446.

The parties entered into a negotiated agreement for the 1981-1982 school year. Article XIII of that agreement sets forth procedures to be followed for reducing the teaching staff due to declining enrollment or declining revenues. Briefly stated, the article requires the administrative staff first to determine the number of teachers needed for the ensuing year. If a reduction is

necessary, it is to be achieved, if possible, through "normal attrition" at all grade levels. If further reduction is necessary, school principals for kindergarten through sixth grade are to submit the names of one or two teachers for consideration, and junior and senior high department heads are similarly to submit names for consideration. If further reduction is necessary, the determination of who shall be affected shall be made by an evaluation committee made up of three persons selected by the Board and three by the OEA. Any teacher who may be affected by the proposed staff reduction is to be given notice by April 1 that his or her position has been terminated pending a decision of the evaluation committee. Affected teachers desiring to stay must submit a merit folder to the superintendent's office by not later than May 1 and the committee must make its report promptly thereafter. The committee is to review the merit folders of each teacher, determine which teachers are best suited for reemployment, and submit its report to the superintendent who then passes the recommendation on to the Board. Teachers affected are to be notified of the decision of the evaluation committee on or before May 15. The Board then makes the final decision.

While this agreement was in effect, the Board became aware that the number of pupils for the following year would be smaller and therefore a reduction in the teaching staff was necessary. On March 8, 1982, the Board met and voted not to renew the contracts of ten nontenured or probationary teachers. Notice of the intent not to renew was given to the ten teachers affected. On March 15, 1982, the Board unanimously passed a motion resolving to nonrenew the ten teachers' contracts, and caused notice of such resolution to be sent to those teachers. The procedures for reduction of the teaching staff set forth in Article XIII of the negotiated agreement were not followed.

The OEA filed its petition in this action on March 25, 1982, and on April 1, 1982, filed an amended petition. It states many of the facts given above and seeks judgment declaring that Article XIII of the agreement applies to all teachers (including those without tenure) employed by USD No. 290, declaring the Board's action to be a violation of that article, and for temporary and permanent orders enjoining the Board from breaching the provisions of Article XIII, and an order in the nature of man-

damus directing the Board to reinstate the ten teachers. An answer was filed April 12, 1982, including an allegation that the petition fails to state a claim upon which relief can be granted. The Board later filed a motion to dismiss for failure to state a cause of action. That motion was argued and sustained by the court on April 29, 1982, and the case was dismissed with prejudice. This appeal followed.

We shall first consider the meaning of "attrition" as used in the agreement. At the hearing on the motion to dismiss, both counsel indicated to the court that, as used in the agreement, the term referred to the reduction of employee staff through voluntary resignations or retirement as opposed to involuntary retirement or the nonrenewal of current employees. The trial court, however, concluded that normal "attrition" includes the process of nonrenewing nontenured teachers. We disagree. Webster's Seventh New Collegiate Dictionary (1969), as well as later editions of Webster's New Collegiate Dictionary (1976) and (1977), define attrition as "a reduction (as in personnel) chiefly as a result of resignation, retirement or death." The word is frequently used in connection with personnel matters, and carries the connotation of voluntary or natural reduction in the number of employees, rather than reductions created by action of the employer such as discharge or failure to renew. We conclude that the trial court erred when it included nonrenewal of nontenured teachers within the scope of the meaning of normal attrition. This error, however, is not determinative of the case.

The next and determinative issue is whether Article XIII conflicts with any of the provisions of the teachers' contracts statutes, K.S.A. 72-5401 *et seq.* We conclude that it does.

K.S.A. 72-5410, -5411 and -5412 make up the teachers' continuing contract law. Section 5411 provides in part that all teachers' contracts "shall be deemed to continue for the next succeeding school year *unless written notice of intention to terminate the contract is served by the board of education upon any teacher on or before the fifteenth day of April    .* . . ." (Emphasis supplied.) Similarly, K.S.A. 72-5437, a part of the due process procedure act, provides in part that: "All contracts of employment of teachers    .   .   .   shall be deemed to continue for the next succeeding school year unless written notice of termination or nonrenewal is served as hereinafter provided. Written no-

tice . . . of intention to nonrenew a contract shall be served by a board upon any teacher on or before the fifteenth day of April." Under these statutes, it is clear that the Board was bound to make a determination of which teachers were to be nonrenewed and to give those teachers notice of nonrenewal on or before April 15; otherwise, the teachers would have continuing contracts for the ensuing school year.

Article XIII of the agreement does not speak specifically about notices to terminate or to nonrenew. It requires an April 1 notice to the teacher that the teacher's *position* has been terminated pending a decision of the evaluation committee. It then requires a submission of a merit folder by May 1 of teachers who wish to be considered for future employment, an evaluation by the committee by May 15, notice to the teachers affected of that decision by May 15, and a final decision by the board thereafter.

The purpose of this Article is to give the teachers, through the OEA, an opportunity to have some input into the decision-making process, a voice in the determination of which teachers will be retained and which will be released, either by nonrenewal or by termination, when a reduction in the teaching staff is required. The recommendation, however, comes thirty days too late; the Board must determine which particular teachers are to be terminated or nonrenewed and must give those persons notice of termination or nonrenewal by April 15. If the Board delays that decision until after May 15, it loses its chance to reduce its teaching staff.

Appellant argues that the April 1 notice that a teacher's position is being terminated is not the equivalent of notice of intent not to renew. We agree. But appellant also points out that if a teacher is given notice that his position is being terminated but is not notified that his contract is being nonrenewed, "the teacher may safely assume that he will be transferred to another position within the district." This is also true. But notification that a position is being terminated, without an accompanying notice of nonrenewal of contract, does not effect a reduction in the size of the teaching staff. Under the quoted statutes, the Board is required to serve notice of termination or nonrenewal by April 15, and in order to do that it must determine which teachers to terminate or nonrenew prior to that date. The Board could have given notice of nonrenewal or termination by April 15 to a large

group of teachers and then awaited the May 15 report of the evaluation committee before determining which teachers should be retained and which should be terminated; but this procedure would leave the affected teachers, the affected departments and the Board in limbo for another month. Such an alternative is not realistic, surely was not contemplated, and is certainly not beneficial to the teachers, the school system, the Board, or the public.

The purpose of the continuing contract law is to eliminate uncertainty and possible controversy regarding the future status of a teacher and a school with respect to the teacher's continued employment. *Krahl v. Unified School District*, 212 Kan. 146, Syl. ¶ 2, 509 P.2d 1146 (1973). Article XIII of the agreement has the effect of preventing the fulfillment of this statutory objective.

If wholesale notices of nonrenewal or termination are given by the Board prior to April 15, in order to give meaningful effect to the provisions of Article XIII providing for participation of the teaching staff in the decision of who to retain and who to release, a large number of teachers are left in limbo not knowing if their contracts are to be renewed. If the Board, as it did here, selects the teachers whom it wishes to nonrenew, then there can be no meaningful application of Article XIII since the ultimate decision has already been made. Surely Article XIII does not contemplate that the Board will wait until after May 15 to give notice of nonrenewal or termination, for the Board cannot contract to vary the terms of the applicable continuing contract statutes. *Gragg v. U.S.D. No. 287*, 6 Kan. App. 2d 152, Syl. ¶ 5, 627 P.2d 335 (1981).

We conclude that the Board was fully authorized by statute to give the notices of nonrenewal which it issued prior to April 15, 1982. The provisions in the negotiated agreement conflict with the purposes of the statutory scheme and are therefore ineffective and void.

Other issues raised have not been overlooked, but need not be determined in view of our disposition of the case. For the reasons stated, we hold that the trial court was correct in sustaining the motion to dismiss. The judgment is affirmed.