**Chris MINDEMANN, President of the Apache Education Association; and the Apache Education Association, an unincorporated association, on behalf of Kathy Stricker, an individual, and Terry Stricker, an individual, Appellants,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 6 OF CADDO COUNTY, Oklahoma, a/k/a Apache Public Schools; Lee Lewis, Jimmy D. Hunter, Charles McDaniel, James Roberts, and Leon Sawyer, as members of the Board of Education of Independent School District No. 6 of Caddo County, Oklahoma; and Earl Myers, as Superintendent of Independent School District No. 6 of Caddo County, Oklahoma, Appellees.**

No. 67163.

Supreme Court of Oklahoma.

April 4, 1989.

Richard B. Wilkinson, Oklahoma Educ. Ass'n, Oklahoma City, for appellants.

Mills, Whitten, Mills, Mills & Hinkle by Earl D. Mills, Michael W. Hinkle and Barbara K. Buratti, Oklahoma City, Oklahoma

and Wade & Mackey, By: C.E. Wade, Jr., Lawton, for appellees.

HODGES, Justice.

Kathy Stricker, a probationary teacher, and Terry Stricker, a tenured teacher, (appellants) are employed by the Independent School District No. 6 of Caddo County, Oklahoma, a/k/a Apache Public Schools (Public Schools or appellee). On March 3, 1986, the Apache Board of Education (Board) voted to discontinue Terry's extra-duty coaching assignment for the 1986–87 school year. On April 1, 1986, the Board voted to nonrenew Kathy's teaching contract for the 1986–87 school year.

Thereafter, Terry and Kathy each filed grievances alleging the Board's actions violated a provision of the collective bargaining agreement (Agreement) dealing with disciplinary actions against professional employees. The Agreement had been entered into between the Board and the Apache Education Association (Association), the designated bargaining representative of the professional educators employed by Apache Public Schools, and ratified by Kathy and Terry. The employees asserted the Board's actions were taken without just cause as required by the Agreement. Public Schools refused to process the purported grievances of Terry and Kathy arguing the binding arbitration provision of the Agree-ment was void [1] and nonrenewals and the discontinuance of extra-duty assignments were not disciplinary actions as contemplated by the Agreement.[2]

Association, its president, Terry and Kathy sought mandamus in the District Court of Caddo County against the Public Schools, members of the Board and the Superintendent of the Public Schools to compel the Board to comply with the terms of the Agreement. The district court denied appellants' petition for a writ of mandamus adopting appellees' proposed findings of fact and conclusions of law. The district court found the binding arbitration provision contained in Article IX of the Agreement was void as against public policy because it subjects the execution of appellees' statutory duties relating to nonreemployment of probationary teachers and to fixing of teacher duties to the absolute discretion of a nonstatutory arbitrator.

The Court of Appeals in a memorandum opinion reversed the trial court's judgment and remanded with instructions to issue a writ of mandamus compelling appellees to follow the grievance procedures set forth in the Agreement. It found the Board did not delegate its authority to decide whether a probationary teacher's contract is to be nonrenewed but rather entered into a con-

1. Article IX of the Negotiated Teacher Contract Revision 1985–86 provided in part:

    *Step III:* If the grievant is not satisfied with the disposition of his grievance at Level II or if no decision has been rendered within ten (10) school days after he has first met with the Superintendent, he may within five (5) school days after a decision by the Superintendent or fifteen (15) school days after he has first met with the Superintendent, whichever is sooner, request in writing that the Association submit his grievance to arbitration.

2. Article X of the Negotiated Teacher Contract Revision 1985–86 provided in part:

    No teacher shall be disciplined (*including warnings, reprimands, suspensions, discharges, reduction in rank or professional advantage, or other actions of a disciplinary nature*) *without just cause.* Any such discipline, including adverse evaluation of teacher performance, shall be subject to the grievance procedure hereinafter set forth. The specific grounds and or person or persons forming the basis for disciplinary action shall be made available to the teacher and the Association in writing.

    . . . .

    If dismissal or nonrenewal of a teacher is to be considered because of inadequacies observed in the teacher's professional work with students, such action must minimally be preceeded (sic) by: (1) repeated observations of the inadequacies by more than one administrator through the observation process described elsewhere in the agreement. (2) Clear written direction that the teacher must improve, and the consequences of failure to do so. (3) Adequate opportunity for the teacher to make improvements. (4) Intensive assistance from administrators and school districe (sic) resources to help the teacher improve. (5) Opportunity for the teacher to take a leave of absence not to exceed two semesters, for the purpose of pursuing further study or receiving medical attention (including rest). (Emphasis added).

tract which merely exceeds the statutory minimum requirements for nonrenewal of a probationary teacher, relying on Attorney General Opinion No. 87–20 [3] and *Central Point School District v. Employment Relations Board,* 27 Or.App. 285, 555 P.2d 1269 (1976). The opinion however did not address the second issue concerning the arbitrability of school board decisions to change a teacher's extra-duty assignment such as coaching.

■ The precise issues presented in this case are of first impression in this jurisdiction: (1) Whether a local board of education may voluntarily enter into a collective bargaining agreement providing for binding arbitration which supersedes the statutory mandate under 70 O.S.1981 § 6–103.4(E) of the Oklahoma School Code that the decision of the board on the question of a probationary teacher's dismissal or nonreemployment is final and nonappealable and (2) Whether such agreement may supersede the statutory mandate under 70 O.S.Supp. 1983 § 5–117(A)15 that local boards of education shall have power to fix the duties of teachers. We answer both questions in the negative and find statutory enactments either expressly or implicitly limit the ability of a local school board to include certain terms in a collective bargaining agreement which result in the delegation of decisions by binding arbitration which are statutorily vested in the exclusive authority and discretion of the school board.

By legislative enactment of 70 O.S.1981 § 509.6 local boards of education and representatives of both professional and nonprofessional educators have a legal duty to negotiate in good faith on items affecting the performance of professional services. The 1986 amendment to § 509.6 now requires such parties to negotiate in good faith on wages, hours, fringe benefits, and other terms and conditions of employment.

We acknowledge the stated legislative purpose of the School Employees and Districts Negotiations Act,[4] is "to strengthen methods of administering employer-employee relations through the establishment of an orderly process of communications between school employees and the school district." [5] We also recognize this Court has looked with favor upon arbitration statutes and contracts as a shortcut to substantial justice with a minimum of court interference.[6] The statutory right of a board of education to collectively bargain is not, however, unlimited. It must be construed together with other statutory provisions relating to the same subject and reconciled so as to give effect to each. *Inexco Oil Co. v. Corporation Commission,* 628 P.2d 362 (Okla.1981).

As noted by the Court of Appeals of New York in *Board of Ed., G.N.U.F.S.D. v. Areman,* 41 N.Y.2d 527, 394 N.Y.S.2d 143, 362 N.E.2d 943 (1977), public school matters differ from private matters where freedom to contract is virtually unlimited as public school matters are frequently subject to restrictive policies which reflect governmental interests and public concern. The *Areman* court observed that boards of education are merely representatives of the public interest and the public interest must, certainly at times, bind these representatives and limit or restrict their power to, in turn, bind the public which they represent. The New York courts have taken the position that a term in a public school collective bargaining agreement is "limited 'by plain and clear, rather than express, prohibitions in the statute or decisional law' as well as in some instances by 'public policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in

**3.** Attorney General Opinion No. 87–20 concludes:

> Local boards of education may voluntarily agree to include a provision for binding arbitration of grievances in a grievance procedure which is part of a collective bargaining agreement, negotiated pursuant to 70 O.S.1981,

§§ 509.1, *et seq.,* as amended, between the school district and its employees.

**4.** 70 O.S.1981 § 509.1, et. seq. (enacted in 1971).

**5.** 70 O.S.Supp.1983 § 509.1.

**6.** *Association of Class. Teach. v. Independent S.D. # 89,* 540 P.2d 1171, 1176 (Okla.1975).

neither.' " [7]

It has been judicially observed that the public policy limitation on public sector collective bargaining statutes is necessary in order that the collective actions of public employees do not distort the normal political process for controlling public policy.[8] The New Jersey Supreme Court observed in *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 78 N.J. 144, 163, 393 A.2d 278, 287 (1978):

> A private employer may bargain away as much or as little of its managerial control as it likes. However, the very foundation of representative democracy would be endangered if decisions on significant matters of governmental policy were left to the process of collective negotiation, where citizen participation is precluded. This Court would be most reluctant to sanction collective agreement on matters which are essentially managerial in nature, because the true managers are the people. Our democratic system demands that governmental bodies retain their accountability to the citizenry.

*Id.* at 163, 393 A.2d at 287 (citations omitted). Similarly, the Kansas, Illinois and Massachusetts courts have held a school board cannot negotiate a term in a collective bargaining agreement which involves the delegation of a statutory duty or the surrender of discretion vested in the board by statute.[9]

We find the approach taken by these jurisdictions persuasive and hold today a local board of education may not negotiate a term in a collective bargaining agreement resulting in binding arbitration which would restrict its nondelegable statutory authority.

## I. NONREEMPLOYMENT OF A PROBATIONARY TEACHER

▮▮▮ Title 70 O.S.1981 § 6–103.4(E) [10] as construed by this Court, expressly provides that the school board's decision on questions of nonreemployment of a probationary teacher *shall* be final and nonappealable, absent a violation of procedural due process.[11] We note Kathy does not assert a denial of procedural due process in

---

7. *Cohoes City Sch. Dist. v. Cohoes Tchrs. Ass'n,* 40 N.Y.2d 774, 390 N.Y.S.2d 53, 358 N.E.2d 878 (1976) (citations omitted).

8. *Boston Teachers Union, Etc. v. School Committee,* 386 Mass. 197, 434 N.E.2d 1258 (1982); *School Comm. of Boston v. Boston Teachers Union, Local 66,* 378 Mass. 65, 389 N.E.2d 970 (1979); *see also* T. Van Geel, *Authority to Control the School Program* at 126–127 (1976):

> The basis of the power of the public sector unions is the fact that they are organized and active; [that] public officials are often anxious to avoid the disruption of public services; [that] public officials have an incentive to give away much to unions to gain their political support at election time, especially when much of what is given away may be unknown to the public or only have economic and political implications long after these particular officials have left office; and ... that other political groups are often not as organized and have [less] political resources than the unions. Thus, given the power of the unions, to broadly define the scope of negotiations runs the risk of permitting unions to determine the nature and quality of the public service to be offered, an issue of great concern to the community at large and especially to parents in the case of public education.

9. *See e.g., Ottawa Educ. Ass'n v. Unified Sch. Dist.,* 233 Kan. 865, 666 P.2d 680 (1983); *Weary v. Board of Ed., Sch. Dist. No. 189,* 46 Ill.App.3d 182, 4 Ill.Dec. 737, 360 N.E.2d 1112 (1977) (citing *Illinois Education Association v. Board of Education,* 62 Ill.2d 127, 340 N.E.2d 7 (1975)); *Boston Teachers Union, Local 66 v. School Comm. of Boston,* 386 Mas. 197, 434 N.E.2d 1258 (1982); *Berkshire Hills, Etc. v. Berkshire Hills Ed. Ass'n,* 375 Mass. 522, 377 N.E.2d 940 (1978).

10. The terms of 70 O.S.1981 § 6–103.4(E) provide in part:

> If, within the ten-day period, the probationary teacher notifies the clerk of the board of education of his or her desire to have a due process hearing on his or her dismissal or nonreemployment conducted by such board, the board shall, as soon as possible, hold a hearing. At the hearing the probationary teacher shall be afforded all such procedural due process rights as are guaranteed by the Oklahoma and United States Constitution. *At the conclusion of the hearing, the local board of education shall render a final and nonappealable decision on the question of the probationary teacher's dismissal or nonreemployment.* (Emphasis added).

11. *Wood v. Independent School Dist. No. 141,* 661 P.2d 892, 896 (Okla.1983) (nontenured teachers must be afforded only an informal hearing with minimal procedural protection following a principal's recommendation of nonrenewal and the Oklahoma Evidence Code does

the case before us. Section 6–103.4(E) is a special statutory provision which clearly includes the matter in controversy and controls over the more general provisions of § 509.6. *City of Tulsa v. Smittle,* 702 P.2d 367 (Okla.1985).

■ We find the binding arbitration clause is in conflict with the specific proviso found in § 6–103.4(E) which provides that the Board's decision shall be final and nonappealable. We believe this provision goes beyond just establishing a minimum procedural requirement. The Legislature's use of the word "shall" is plain and unambiguous and must be given a mandatory meaning.[12] There is no room for construction or provision for further inquiry when the statute plainly speaks and its evident meaning must be accepted.[13] The use of the mandatory language by our Legislature exemplifies its specific legislative intent to vest sole authority in the local board of education with regard to a probationary teacher's dismissal or nonreemployment.[14] A nondelegable duty was placed on the Board to render a decision in these matters. Accordingly, the Board could not lawfully limit its statutory authority to nonrenew a probationary teacher through a collective bargaining agreement notwithstanding its voluntary agreement to the contrary.[15] We hence find the arbitration clause is void and unenforceable against appellees.

We also observe the Court of Appeals' reliance upon *Central Point School District v. Employment Relations Board, supra,* as precedent is misplaced as that case dealt with the issue whether teacher evaluation *procedures* could be a negotiable term in a collective bargaining agreement, and if such procedures were not followed, whether they could be subject to binding arbitration. Oklahoma statute, 70 O.S. Supp 1986 § 6–102.2, provides in those school disticts with previously existing professional negotiation agreements under 70 O.S.Supp.1986 §§ 509.1—509.10 the procedure for evaluating members of the negotiations unit shall be a negotiable item. However, here appellant Kathy does not seek to submit for arbitration the Board's failure to follow evaluation procedures relating to teacher renewal specified in the collective bargaining agreement, but rather, whether her teaching contract was nonrenewed for just cause. Unlike Kathy, the teacher in *Central Point* asserted the evaluation procedures applied by the school board there were arbitrary and in violation of the collective bargaining agreement. As noted in the *Central Point* opinion, the case did not involve a dispute over the merits of the school board's nonrenewal decision. The factual situation here is clearly distinguishable. Moreover, our Legislature has unequivocally expressed that the substantive aspects of the Board's decision to nonrenew a probationary teacher are final and nonappealable. Consequently, *Central Point School District* is inapposite.

## II. EXTRA–DUTY COACHING ASSIGNMENT

■ We now must address the second issue whether a school board may make its

not apply to the due process hearings of nontenured teachers); *Jackson v. Independent School Dist. No. 16,* 648 P.2d 26, 32 (Okla.1982) (Boards of Education are required to give notice in advance of the hearing of the reasons for nonreemployment and make findings of fact on issues presented in any due process hearing concerning nonreemployment of a probationary teacher).

**12.** *Oldham v. Drummond, Bd. of Ed. of Ind. Sch. Dist. # 1–85,* 542 P.2d 1309, 1311 (Okla.1975).

**13.** *Jackson v. Independent School Dist. No. 16,* 648 P.2d at 29.

**14.** *Superintending School Committee v. Winslow Education Assoc.,* 363 A.2d 229, 231, 234 n. 2

(Me.1976) (the holding is limited to statute prior to its 1976 amendment which would now permit binding grievance arbitration for nonrenewals); *cf.* Board of Educ. of the *City of Chicago v. Chicago Teachers Union, Local 1,* 88 Ill.2d 63, 58 Ill.Dec. 860, 430 N.E.2d 1111 (1981); *Ottawa Educ. Assoc. v. Unified Sch. Dist. No. 290,* 233 Kan. 865, .666 P.2d 680, 684 (1983); *School Comm. of W. Springfield v. Korbut,* 373 Mass. 788, 369 N.E.2d 1148 (1977).

**15.** *Cf. Board of Directors v. Maine School Admin,* 428 A.2d 419, 422 (Me.1981) (court rejected Association's argument that because the statute does not *expressly* preclude voluntary agreements governing hiring procedures, the Board, having voluntarily entered the agreement must be bound by it).

statutory duty to fix teacher's duties subject to binding arbitration. With regard to the arbitrability of the Board's decision to discontinue Terry's extra-duty coaching assignment appellees assert the Court of Appeals' decision ordering the grant of mandamus is contrary to Oklahoma statute under 70 O.S.Supp.1983 § 5–117(A)15 which gives specific authority to local boards of education to fix the duties of teachers.

In *Maupin v. Independent School Dist.*, 632 P.2d 396 (Okla.1981), we held a tenured teacher reinstated to only his primary teaching position after nonrenewal of employment, had no statutory right to be reinstated to his extra-duty coaching assignment. We concluded a local board of education may assign teachers within the school system as they desire, subject to the statutory boundaries. We observed:

> A teacher may be an excellent teacher, but a poor glee club director, coach, or 4–H club advisor. Neither the school system nor the student should suffer from possible shortcomings in the extracurricular areas when the teacher's talents can be more suitably directed in another area. Nor should a fine academician suffer because he/she is poorly suited to certain extracurricular assignments.

*Id.* at 399. Section 5–117(A)15 explicitly confers upon school boards the function of fixing teacher duties. We hence find a school board has the plenary power to discontinue the extra-duty assignments of a tenured teacher. Such power is essentially managerial in nature and not bargainable. The substantive decision to assign or not assign teachers' duties is basically a policy determination. To find otherwise would *significantly* interfere with the board's inherent managerial responsibility for the local educational policies and duty to maintain adequate standards for the benefit of the pupils and the school district.[16] Assignment of teachers' duties go to the most essential part of the educational process. To inject the element of just cause into the Board's managerial prerogative to not retain Terry in his extra-duty assignment as coach is repugnant to the statutory policy implicit in § 5–117(A)15 and significantly impinges upon the Board's ability to make substantive policy determinations.[17] We conclude it was beyond the power of the Board to bind itself to arbitration through collective bargaining which would have the effect of superseding its nondelegable and exclusive authority to fix teachers' duties, in the absence of any legislation to the contrary.[18]

## CONCLUSION

We conclude that mandamus was properly denied. The Board's final and nonappealable managerial perogative to nonrenew a probationary teacher's contract is not bargainable and hence nonarbitrable under the law. The same may be said of the Board's perogative to assign extra duties to teachers or withhold these assignments. These substantive matters are not subject to delegation, interference or control by collective bargaining agreements or provisions therein for arbitration.

We vacate the decision of the Court of Appeals and affirm the judgment of the trial court.

> In so holding, we are mindful the Legislature explicitly requires boards of education to negotiate in good faith on matters relating to compensation under the 1986 amendment to § 509.6, notwithstanding the boards' duty to fix the compensation of teachers under § 5–117(A)15. It thus would appear such compensation matters which are mandatorily negotiable are properly subject to grievance arbitration if within a contractual arbitration clause. However, we will leave for another day the disposition of such issue as the facts in the present suit deal only with the nondelegable power of the board to fix the duties of teachers.

**16.** *Ridgefield Park,* 78 N.J. at 156, 393 A.2d at 278.

**17.** *Bd. of Trust. of Com. Dist. No. 513 v. Krizek,* 113 Ill.App.3d 222, 68 Ill.Dec. 770, 446 N.E.2d 941 (1983).

**18.** *School Comm. of W. Springfield v. Korbut,* 373 Mass. 788, 369 N.E.2d 1148 (1977); *School Comm. of Hanover v. Curry,* 369 Mass. 683, 343 N.E.2d 144 (1976); *School Comm. of Braintree v. Raymond,* 369 Mass. 686, 343 N.E.2d 145 (1976); *Sweet Home Cent. Sch. Dist. v. Sweet Home, Etc.,* 90 A.D.2d 683, 455 N.Y.S.2d 685 (1982).

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER, SIMMS and ALMA WILSON, JJ., concur.

KAUGER, J., concurs in result.

SUMMERS, J., concurs in part, dissents in part.