CITY OF ANADARKO, Appellee,

v.

FRATERNAL ORDER OF POLICE, LODGE 118, Appellant.

CITY OF ADA, Appellee,

v.

FRATERNAL ORDER OF POLICE, LODGE 111, Appellant.

CITY OF CHICKASHA, Appellee,

v.

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 2041, Appellant.

CITY OF CHICKASHA, Oklahoma, a municipal corporation, Appellee,

v.

FRATERNAL ORDER OF POLICE, LODGE 129, Appellant.

No. 86,046, No. 86,047, No. 86,093, No. 86,094.

Supreme Court of Oklahoma.

Feb. 18, 1997.

James R. Moore, Horning, Johnson, Grove, Moore, Hulett & Thompson, Oklahoma City, for Appellant Fraternal Order of Police Lodge 118.

Tony G. Puckett, Don W. Danz, Lytle, Soule & Curlee, P.C., Oklahoma City, for Appellee City of Anadarko.

James R. Moore, Horning, Johnson, Grove, Moore, Hulett & Thompson, Oklahoma City, for Appellant Fraternal Order of Police Lodge 111.

Tony G. Puckett, Don W. Danz, Lytle, Soule & Curlee, P.C., Oklahoma City, Alvin Files, City Attorney, City of Ada, for Appellee City of Ada.

James R. Moore, Horning, Johnson, Grove, Moore, Hulett & Thompson, Oklahoma City, for Appellant International Association of Firefighters, Local 2041.

Tom Frailey, Huckaby, Fleming, Frailey, Chaffin, Cordell, Greenwood & Perryman, Chickasha, for Appellee, City of Chickasha.

James R. Moore, Horning, Johnson, Grove, Moore, Hulett & Thompson, Oklahoma City, for Appellant Fraternal Order of Police Lodge 129.

Tom Frailey, Huckaby, Fleming, Frailey, Chaffin, Cordell, Greenwood & Perryman, Chickasha, for Appellee, City of Chickasha.

SUMMERS, Vice Chief Justice.

We treat as companions cases numbered 86,046, 86,047, 86,093 and 86,094, because most of the issues presented are identical. In each case an appeal was lodged in this Court after the District Court held 11 O.S.Supp.1994, § 51–108 unconstitutional. We hold otherwise and reverse the District Courts' rulings.

The Legislature recently enacted 11 O.S.Supp.1994 § 51–108, which permits binding interest arbitration between municipalities and their police and firefighters as to collective bargaining agreements. In summary the statute permits each side to submit its last best offer to an arbitrator, and the arbitrator selects one. If the city's offer is not chosen the city may hold an election, allowing the voters to select either the city's offer or the union's offer.

In each case at bar negotiations began between the union and the municipality for a new collective bargaining agreement. An impasse was declared, and the union requested binding interest arbitration under Section 51–108. The city brought suit for declaratory judgment, asking that Section 51–108 be declared unconstitutional. In each case the District Court agreed that the statute offended the Oklahoma Constitution.

Our recent opinion in *Fraternal Order of Police v. City of Choctaw,* 67 O.B.J. 2235, 933 P.2d 261 (1996) (rehearing denied), resolves most of the issues raised by the parties in these four cases. In *Fraternal Order of Police* we upheld Section 51–108 as constitutional under Oklahoma Constitution Art. 18, §§ 3 and 4, Art. 5, §§ 46 and 59, Art. 10, §§ 20 and 26, and under U.S. Constitution,

Art. 4, § 4. We also held that the statute shall not be applied retroactively.

The remaining issues raised by the cities are: (1) Whether Section 51–108 denies access to courts contrary to Okla. Const. Art. 2, § 6, (2) Whether it violates the cities' right to jury trial in violation of Okla. Const. Art. 2 § 19, (3) Whether it violates Art. 23 § 8 of the Oklahoma Constitution, and (4) Whether it violates public policy. We answer all these in the negative.

ARTICLE 2, SECTION 6

■ Article 2, Section 6 of the Oklahoma Constitution states:

> The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong an for every injury to person, property or reputation; and right and justice shall be administered without sale, denial, delay or prejudice.

We have repeatedly held that this is a mandate to the judiciary rather than a limitation on the legislature's right to enact laws. *Rollings v. Thermodyne Industries, Inc.,* 910 P.2d 1030, 1032; *Wagoner County Election Bd v. Plunkett,* 305 P.2d 525 (Okla1956). Section 6 is intended "to guarantee that the judiciary would be open and available for the resolution of disputes, but not to guarantee that any particular set of events would result in court-awarded relief." *Id.* Section 6 is most often used to insure equal access to court, regardless of status. *Id.; Jeffries v. State,* 9 Okla.Crim. 573, 132 P. 823 (1913).

In *Rollings* we held that the "access to court" provision was satisfied because the Uniform Arbitration Act provided for judicial review, albeit limited, to enforce the award and vacate it if any of several circumstances is found to exist.[1] Although in the present case the Fire and Police Arbitration Act has no express statutory authority for review of a collective bargaining agreement reached through Section 51–108 procedures, this Court has repeatedly reviewed the statutory collective bargaining process for constitutional compliance. *City of Bethany v. Public*

---

1. The Uniform Arbitration Act, 15 O.S.1991 § 801 et seq. provides for judicial review for instances of fraud, bias of an arbitrator, arbitra-tor's exceeding his or her power, an unfair hearing or the absence of an arbitration agreement. *Rollings,* at 1033.

*Employees Relations Bd.,* 904 P.2d 604 (Okla.1995); *City of Del City v. Fraternal Order of Police,* 869 P.2d 309 (Okla.1993); *City of Tulsa v. Public Employees Relations Bd.,* 845 P.2d 872 (Okla.1990). As in *Rollings,* neither party is denied access to court, although the review may be more limited.[2] We find no violation of Article 2, Section 6.

## ARTICLE 2, SECTION 19

■ The cities also claim that Section 51–108 violates their right to jury trial as provided in Okla. Const. Art. 2, Section 19. In *City of Bethany,* 904 P.2d at 614, we addressed this issue in regard to Section 51–111, the section of the Fire and Police Arbitration Act requiring binding grievance arbitration. We held that Art. 2, Section 19 is "waivable and not all disputes between the parties are required to be resolved by a jury—the right to a jury depends on the nature of the dispute." *Id.* We can not envision the use of a jury in the collective bargaining process. Nor do we see a reason to reach a different result merely because we are dealing with binding interest arbitration rather than binding grievance arbitration.[3]

## ARTICLE 23, SECTION 8

■ Article 23, Section 8 of the Oklahoma Constitution reads:

Any provision of a contract, express or implied, made by any person by which any of the benefits of this Constitution is sought to be waived, shall be null and void.

Recently, in *Rollings,* 910 P.2d at 1032, we interpreted this constitutional provision in an arbitration controversy. The issue was whether an arbitration provision in an agreement between private parties was violative of Section 8. We held that it was not.

To reach this conclusion we observed that a violation of Section 8 is "dependent on the abridgement of some other state constitution-al right." If no other constitutional violation occurs Section 8 remains unimplicated. Only when another provision of the Oklahoma Constitution is breached by agreement, "express or implied," can Section 8 be invoked. Here we have found no merit in any of the alleged constitutional violations urged by the cities. There is no violation of Section 8.

## PUBLIC POLICY

■ Finally, the cities urge that Section 51–108 violates the public policy of this state. Citing to *Mindemann v. Independent School District No. 6,* 771 P.2d 996, 999 (Okla.1989), they urge that public policy demands that collective bargaining statutes yield to the power of local officials to exercise their discretion and perform their elected functions. The City of Chickasha also asserts that by requiring an election the resolution of labor disputes will be delayed, unfair advantage is given to the unions, and the resulting collective bargaining agreements could work a financial hardship on the city.

As for the authority of local officials, we addressed this in *Fraternal Order of Police, supra.* We held that police and fire protection is a matter of statewide concern, and that the Legislature has the power to enact laws to insure the continuity of such protection. *See also Midwest City v. Cravens,* 532 P.2d 829, 834 (Okla.1975). It is the duty of the Legislature to make the public policy for Oklahoma. *Rollings,* at 1036; *Oklahoma Water Resources Bd. v. Texas County Irrigation & Water Resources Ass'n,* 711 P.2d 38, 41 n. 2 (Okla.1985). Specifically, Section 51–101 declares the public policy of the state to be that the continued protection of its citizens requires that fire fighters and police be denied the right to strike. In exchange for the denial of this right police and fire fighters are afforded other benefits, such as those given in Section 51–108.

As for the arguments of delay in resolution, the possibility of hardship on the cities,

---

**2.** In *Fraternal Order of Police* we indicated our ability to review mandatorily arbitrated collective bargaining agreements. We expressed concern that under certain circumstances Section 51–108 may be constitutionally infirm *as applied,* but noted that facts were not before the Court to support such a review in that case.

**3.** Grievance arbitration involves a contract interpretation and the resolution by an arbitrator of a dispute between employer and employee over a term in the collective bargaining agreement. On the other hand, interest arbitration involves contract formation and the creation of a collective bargaining agreement through the process of collective bargaining and negotiation. *City of Bethany,* 904 P.2d at 607 n. 3.

and the claimed advantage given to the unions, it may be that Section 51–108 will do those things. Clearly, waiting for an election does cause a delay in resolution of the dispute. However, this is the avenue the Legislature saw fit to follow, and we must presume that our elected lawmakers were aware of the consequences inherent in Section 51–108's procedures. Section 51–108 may give an advantage to the unions, but the Legislature did not deem the advantage to be unfair in light of the forfeiture of their right to strike. This Court's role in cases such as this is to scrutinize the statutes for their constitutionality, not to fashion for the state the public policy of our own choosing.

Finally, we can agree that Section 51–108 may cause hardships on cities by requiring the funding of an election, and possibly the adoption of a contract not agreed to by city officials. However, as we stated in *Fraternal Order of Police, supra,* such financial hardship will not be permitted to offend the constitutional requisites of Okla. Const., Art. 10, Section 26. All parties must realize that the city officials are responsible to citizens for more than just police and fire protection, and that funds are not unlimited. We have not construed Section 51–108 to be without limits, nor to enable unions to enjoy any agreement they seek and obtain without regard to other constitutional restraints. Any hardships claimed by the cities are subject to being addressed on a case-by-case basis to determine whether the collective bargaining agreement is in compliance with the state Constitution.

For these reasons the lower courts' judgments are reversed, and the cases are remanded to their respective District Courts.

KAUGER, C.J., and LAVENDER, SIMMS, HARGRAVE and WILSON, JJ., Concur.

HODGES and WATT, JJ., Dissent.

OPALA, J., dissenting. "I would declare that the provisions of 11 O.S.Supp.1994 § 51–108 are constitutionally infirm."