CITY OF BETHANY, Oklahoma,
Appellant,

v.

The PUBLIC EMPLOYEES RELATIONS BOARD OF the STATE of Oklahoma and International Association of Firefighters, AFL–CIO/CLC, Local 2085, Appellees.

No. 81003.

Supreme Court of Oklahoma.

Oct. 3, 1995.

Richard E. Coulson, James R. Moore, Judith Shifrin, Oklahoma City, for Appellee, International Association of Firefighters.

Susan B. Loving, Attorney General of Oklahoma, James R. Johnson, Assistant Attorney General, Rebecca Rhodes, Assistant Attorney General, Oklahoma City, for Appellee, Public Employees Relations Board.

Diane Pedicord, Sue Ann Nicely, Oklahoma City, for Amicus Curiae, Oklahoma Municipal League, Inc.

KAUGER, Vice Chief Justice.

Two dispositive issues are presented [1]: (1) whether the statutory duty to bargain in good faith was violated when the City proposed that certain terms of the collective bargaining agreement (CBA) under negotiation *not* be subject to grievance arbitration as is required by 11 O.S.Supp.1985 § 51–111; [2] and (2) whether mandatory grievance arbitration is violative of several provisions of the Oklahoma Constitution. We find that § 51–111 permits the parties to negotiate over the exclusion of certain substantive issues from the collective bargaining agreement. It also provides for an alternative regime for managing the procedural aspects of grievance arbitration if the parties fail to reach agreement, as to contract language. However, the statute clearly requires that

---

1. Although the appellant argues 4 propositions of error, we find that they are appropriately encapsulated in two dispositive questions.

2. Title 11 O.S.Supp.1985 § 51–111 provides:

"Any agreement actually negotiated between the bargaining agent and the corporate authorities either before or within thirty (30) days after arbitration shall constitute the collective bargaining contract governing fire fighters or police officers in the municipality for the period stated therein; provided that such period shall not exceed one (1) year. Any collective bargaining agreement negotiated under the terms and provisions of this article shall specifically provide that the fire fighters or police officers who are subject to its terms shall have no right to engage in any work stoppage, slowdown or strike, the consideration for such provision being the right to a resolution of disputed questions. All rules, regulations, fiscal procedures, working conditions, departmental practices and manner of conducting the operation and administration of fire departments and police departments currently in effect on the effective date of any negotiated agreement shall be deemed a part of said agreement unless and except as modified or changed by the specific terms of such agreement. Every such agreement shall contain a clause establishing arbitration procedures for the immediate and speedy resolution and determination of any dispute which may arise involving the interpretation or application of any of the provisions of such agreement or the actions of any of the parties thereunder. In the absence of such negotiated procedure such dispute may be submitted to arbitration in accordance with the provisions of Section 51–107 through 51–110 of this title, except that the arbitration board shall be convened within ten (10) days after demand therefor by the bargaining agent upon the corporate authority or authorities. In such case the arbitration board's determination shall be final."

This section was amended in 1985. Prior to the amendment it required parties to establish procedures for mediation and fact-finding, rather than arbitration.

once terms are included in the CBA, they must be subject to grievance arbitration, and that it is an unfair labor practice to assert at the bargaining table that certain terms of the CBA will be excluded from grievance arbitration.[3] We also find that 11 O.S.Supp.1985 § 51–111, which provides for mandatory grievance arbitration is constitutional.

## FACTS

The facts material to these issues, as found by the PERB, are not disputed on appeal. In March of 1987, the appellee, the International Association of Firefighters, Local 2085 (the Union) and the appellant, the City of Bethany (the City/Bethany), began negotiating for a collective bargaining agreement for the 1987–1988 fiscal year. During the course of negotiations, the City proposed that certain issues would not be subject to arbitration under the new contract.[4] In response to this proposal, the Union, arguing that pursuant to 11 O.S.Supp.1985 § 51–111, of the Fire and Police Arbitration Act (the Act/FPAA), every item of a contract must be arbitrable,[5] declared an impasse on June 10, 1987.[6]

In August of 1987, the Union filed an unfair labor practice charge against the City of Bethany with the Public Employees Relations Board (the PERB/Board). After a hearing, the PERB found that § 51–111 does not allow parties to negotiate for the removal of a class of grievances, issues, or penalties from the arbitration process, that the City had committed an unfair labor practice, and that a cease and desist order should issue.[7] The City was ordered to cease and desist from bargaining in bad faith by proposing and insisting upon illegal bargaining proposals.

---

3. Grievance arbitration is ordinarily referred to as contract interpretation and it involves the resolution by a third party of a dispute between the public employer and the public employee over the proper interpretation of an existing collective bargaining agreement, whereas impasse/interest arbitration, involves the resolution of an impasse in collective bargaining over the terms of a new contract. *Moon v. Police Officers,* 508 Pa. 495, 498 A.2d 1305, 1308 (1985). This definitional distinction is reflected in the text of § 51–111, which refers to "any dispute which may arise involving the interpretation or application of any of the provisions of such agreement or the actions of any of the parties thereunder." See note 2, supra.

4. The Union proposed that grievances be filed with the corporate authorities and if the dispute were not resolved, it be submitted to arbitration as provided in 11 O.S.Supp.1985 § 51–111, see note 2, supra. Bethany submitted a counter proposal which recommended that any decision of an arbitrator pertaining to penalties imposed through disciplinary actions be a recommendation to the City Manager, who would have final authority to decide the grievance. The Union suspended negotiations and refused to meet. In May of 1987, believing the City had withdrawn its previous arbitration proposal, the Union resumed negotiations with Bethany and the City submitted the arbitration proposal which is at issue here. Under this proposal, the arbitrator's authority to resolve disputes over issues involving disciplinary actions and the discharge of employees was limited and not within the arbitrator's authority to resolve. The City asserted that pursuant to its city charter, the city manager possessed certain rights which included the exclusive right to resolve disputes regarding discipline and discharge. This Court has recognized that matters provided by a city charter provision

which are "of purely local concern" are not governed by the firefighter and police officer arbitration statutes. See, *Oliver v. City of Tulsa,* 654 P.2d 607, 609 (Okla.1982). Here, however, the requirements of 11 O.S.Supp.1985 § 51–111, see note 2, supra, that all contract interpretation issues be subject to grievance arbitration, are unequivocally a matter of state-wide concern. See discussion pages 610–11, infra. See, *Board of Police Comm'rs v. White,* 171 Conn. 553, 370 A.2d 1070, 1075 (1976) (Any conflict or inconsistency which might exist between city charter provision which granted the board of police commissioners the power to remove police officers and the state statutory provision regarding arbitration of grievances would be governed by the state statute which took precedence over the city charter.). The FPAA makes one very limited exception from this rule. If police officers or firefighters engage in a strike or work stoppage, the City is required to convene its own disciplinary proceeding from which the employee may appeal directly to district court, 11 O.S.1985 § 51–101(B).

5. Title 11 O.S.Supp.1985 § 51–111, see note 2, supra.

6. The parties resumed negotiations in late May of 1987, and eventually submitted several disputed issues to interest/impasse arbitration. However, the dispute at issue was never submitted to impasse arbitration. Instead, the impasse was resolved through the agreement of the parties in October of 1987.

7. Title 11 O.S.1981 § 51–102(5) provides in pertinent part:

" 'Collective bargaining' shall mean the performance of the mutual obligation of the munici-

On January 15, 1992, the City of Bethany filed a petition for review of the PERB's decision in District Court challenging both the PERB's determination that it committed an unfair labor practice and the constitutionality of § 51–111. The District Court affirmed the PERB, and upheld the constitutionality of § 51–111. The City appealed.

## I.

**THE DUTY TO BARGAIN IN GOOD FAITH IS VIOLATED WHEN A PARTY INSISTS THAT CERTAIN TERMS OF THE FINAL AGREEMENT WILL NOT BE SUBJECT TO GRIEVANCE ARBITRATION.**

### A.

**Although 11 O.S.SUPP.1985 § 51–111 permits different grievance administration *procedures,* it requires that *all* disputes over *any* terms contained in the collective bargaining agreement be subject to final and binding grievance arbitration.**

Under the Act, union representatives and municipalities are obligated **to meet and ne-** gotiate in good faith [8] **over issues concerning wages, hours, grievances, working conditions and other terms and conditions of employment.**[9] These items are mandatory subjects of bargaining and neither party is compelled to agree to a proposal or required to make a concession regarding such items during the negotiation process.[10]

Arbitration is the prime vehicle for resolving a dispute concerning the interpretation of a collective bargaining agreement formed under the FPAA. The legislative proclamation in 11 O.S.1981 § 51–111 ensures arbitration's use by requiring an arbitration clause in all collective bargaining agreements entered into under the Act. The statute commands that any controversies over the interpretation or application of collective bargaining agreements are to have an "immediate and speedy resolution by required mediation."[11]

█ Before addressing the duty to negotiate in good faith as it applies to grievance arbitration[12] we must first ascertain the leg-

pal employer or his designated representatives and the representative of the employees to meet at reasonable times ... to confer in good faith with respect to wages, hours and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder; and to execute a written contract incorporating any agreement reached if requested by either party. Such obligation shall not, however, compel either party to agree to a proposal or require the making of a concession."
The current version of this section remains unaltered.
Title 11 O.S.1981 § 51–103(A) provides in pertinent part:
 "Fire fighters and police officers in any municipality shall have the separate right to bargain collectively with their municipality ... with respect to wages, salaries, hours, rates of pay, grievances, working conditions and all other terms and conditions of employment."
The current version of this section remains unaltered.
It is an unfair practice, within the jurisdiction of PERB, for the "corporate authorities [to] refus[e] to bargain collectively or discuss grievances in good faith with the designated bargaining agent *with respect to any issue coming within the purview of this article."* Title 11 O.S.1981 § 51–102(6a). (Emphasis added.).

8. Refusing to bargain collectively or discuss grievances in good faith subjects the bargaining agent and/or the corporate authority to an unfair labor charge and criminal penalties. See, 11 O.S.1981 § 51–102(6). See also, 11 O.S.1981 § 51–113.

9. *Stone v. Johnson,* 690 P.2d 459, 460 (Okla. 1984). Title 11 O.S.1981 § 51–102(5), see note 7, supra. Title 11 O.S.1981 § 51–103(A), see note 7, supra. See also, 11 O.S.Supp.1985 § 51–105.

10. Title 11 O.S.1981 § 51–102(5), see note 7, supra.

11. *City of Muskogee v. Martin,* 796 P.2d 337, 339–40 (Okla.1990).

12. Our jurisprudence has long recognized that the Act provides for two different types of arbitration to resolve disputes which arise between the parties to a collective bargaining agreement. The first type of arbitration, known as impasse or interest arbitration, is used to facilitate negotiations. This type of arbitration applies when parties, during the negotiation process, reach an impasse and cannot agree on a term or an issue when writing the collective bargaining contract. See, 11 O.S.1981 §§ 51–106—51–108 which pro-

islative meaning and purpose of § 51–111.[13] The primary object of statutory construction is to ascertain the legislative intent. That intent is ascertained from the whole act in the light of the general purpose and object.[14] This Court has previously concluded that the statutory language in § 51–111 expresses a clear legislative intent that *any* disputes arising from the interpretation or application of the binding collective bargaining agreement shall have an immediate and speedy resolution by required arbitration.[15]

Applying these rules of statutory construction to § 51–111, we can elucidate the overall meaning of the statute by paraphrasing each of its sentences as follows: (1) negotiated agreements between labor and management constitute the CBA governing fire fighters and police officers for a period of up to one year; (2) all CBAs must include a no-strike clause, in exchange for the right to a resolution of disputed questions; (3) existing work rules and conditions become part of the CBA unless the parties agree to exclude them; (4) every CBA must include a grievance arbitration procedure for the resolution of disputes over the "interpretation or application" of

any provision of the CBA; (5) if the parties fail to agree on a negotiated procedure for managing grievances, they may utilize the statutory procedures for selecting impasse arbitrators; and (6) if the statutory procedure is used for selecting grievance arbitrators, the arbitral determination must still be final.

With this outline of the statute in mind, the following principles of legislative policy emerge with respect to grievance arbitration:

(1) The prohibition against strikes by fire fighters and police officers is not contained in the constitution. It occurs only in the statute. The Legislature explicitly balanced the requirement that CBAs contain a no-strike provision with the right to grievance arbitration.[16] Invalidating grievance arbitration would destroy this vital, conscious public policy decision.

■ (2) "Any" dispute over the "interpretation or application of any provision" of the CBA is subject to grievance arbitration. Neither side can bargain to exclude certain

---

vide for the procedures to be used in pursuing interest arbitration. Interest or impasse arbitration involves the submission of a dispute concerning the terms of a new contract to an arbitrator, who selects those terms and, in effect, writes the parties' collective bargaining agreement. *N.L.R.B. v. Big Three Indus., Inc.*, 497 F.2d 43, 48 (5th Cir.1974); *Board of Educ. v. Hawaii Pub. Employment Relations Bd.*, 56 Haw. 85, 528 P.2d 809, 811 (1974); *Fort Myers v. News–Press Pub. Co.*, 514 So.2d 408, 411 (Fla. App.1987). Because impasse/interest arbitration permits an arbitrator to substitute his/her judgment for that of a public official on matters the electorate has entrusted to its elected representatives, it is non-binding. *Transit Auth. v. Amalgamated Transit Union*, 698 S.W.2d 520, 523 (Ky.1985). See, 11 O.S.1981 §§ 51–106, 51–108 providing for non-binding interest arbitration.

The second type of arbitration under the Act is known as grievance arbitration. Grievance arbitration is ordinarily referred to as contract interpretation and it originates only after the parties have reached a complete agreement on the terms and conditions of employment. *Moon v. Police Officers*, see note 3, supra. An arbitrator's function in grievance arbitration is to make factual findings pertaining to a specific claim that the contract has been violated, and to interpret and apply the relevant contractual provisions, reading the agreement as a whole and discerning the intent of the parties, without rewriting the agree-

ment. See, *City & County v. Denver Firefighters Local No. 858*, 663 P.2d 1032, 1037 (Colo.1983) (Grievance arbitration utilizes the expertise of the labor arbitrator in a judicial or quasi-judicial capacity to interpret the voluntary agreement of the parties as expressed in their contract.). A grievance arbitrator cannot add terms to the contract; the arbitrator can only interpret what is contained within the four corners of the agreement. *International Bhd. v. Graham County Elec. Coop., Inc.*, 783 F.2d 897, 899 (9th Cir. 1986); *Ottawa v. Jaklinski*, 423 Mich. 1, 377 N.W.2d 668, 673 (1985), *Moon v. Police Officers*, see note 3, supra; *City & County v. Denver Firefighters Local No. 858*, supra this note at 1038; *New Jersey State Policemen's Benevolent Ass'n v. Irvington*, 80 N.J. 271, 403 A.2d 473, 479 (1979).

13. *McSorley v. Hertz Corp.*, 885 P.2d 1343, 1346 (Okla.1994); *Smicklas v. Spitz*, 846 P.2d 362, 366 (Okla.1992); *Clifton v. Clifton*, 801 P.2d 693, 696 (Okla.1990).

14. *Midwest City v. Harris*, 561 P.2d 1357, 1358 (Okla.1977).

15. *Voss v. City of Oklahoma City*, 618 P.2d 925, 928 (Okla.1980).

16. Sections 51–101(A) and (B) of the FPAA each contain strike prohibitions and penalties for strikes.

contractual provisions from grievance arbitration.

■ (3) When the parties cannot agree to a grievance arbitration procedure, they may resort to the statutory procedures for selecting impasse arbitrators and use those procedures for selecting a grievance arbitration panel.

(4) Advisory grievance arbitration decisions are not contemplated by the statute. The statute unequivocally mandates "final" grievance arbitration, whatever procedure is used to select the arbitrators.

The fundamental flaw in the arguments advanced by the City and Amicus on the issues of statutory construction posed by § 51–111 is a confusion of procedure with substance. Central to the City's position is the assertion that the statute means that "the mechanics, procedures, and substance of grievance resolution clauses are proper subjects of collective bargaining." They are correct with respect to "mechanics" and "procedures," but miss the mark on "substance."

This Court has held, in *Midwest City v. Harris*, 561 P.2d 1357, 1359 (Okla.1977), that virtually identical language in an earlier version of § 51–111 providing an alternative method of selecting grievance arbitrators was procedural and not substantive. We found that in the absence of a required mediation provision in the collective bargaining agreement between police officers and the city, arbitration was required and would be final and binding on both parties. Under § 548.12 [the predecessor to § 51–111], the collective bargaining agreement should contain the procedure for this required mediation. That procedure should be negotiated and placed in the agreement. In the absence of agreed procedure, then the mediation procedure is that contained in the statutory procedures for impasse arbitration.[17] It is

the procedures, not the substantive law, of the impasse arbitration procedures of the Act which is used by § 51–111. That section does not adopt that portion of the impasse arbitration procedures which do not require the City to adopt the opinion of the arbitrators. That option relates only to the adoption of the original collective bargaining agreement. Section 51–111 provides that "the arbitration board's determination shall be final."[18]

## B.

**The duty to bargain in good faith is violated when a party insists upon contract terms which would be illegal if incorporated in the collective bargaining agreement.**

■ Once the grievance arbitration statute, § 51–111, is properly understood, the good faith bargaining duties of the parties with respect to its provisions become clear as well. The parties are free to bargain with respect to the "mechanics" and "procedures" of grievance administration. They may insist on their positions on these issues and press them to impasse. They may also seek to exclude existing "rules, regulations, fiscal procedures, working conditions, etc."[19] from the CBA. With respect to all issues within the scope of bargaining, the parties may strive mightily to negotiate contract language favorable to their interests and to their view of the proper allocation of rights and responsibilities between management and labor in the collective bargaining relationship. What they may *not* do is create a two-tier grievance system in which some grievances are arbitrable and others are not. This approach, if permitted, would undo the careful balance the Legislature has struck in the statute—grievance arbitration in exchange

17. *Voss v. City of Oklahoma City*, see note 15, supra; See, 11 O.S.1971 §§ 548.8–548.11, which are the predecessors to the impasse arbitration provisions of the Act, 11 O.S.1981 §§ 51–106—51–109.

18. *Midwest City v. Harris*, see note 14 at 1359, supra; See, 11 O.S.Supp.1985 § 51–111, note 2, supra.

19. Title 11 O.S.1985 § 51–111 which provides that "[a]ll rules, regulations, fiscal procedures, working conditions, departmental practices and manner of conducting the operation and administration of fire departments and police departments currently in effect on the effective date of any negotiated agreement shall be deemed a part of said agreement unless and except as modified or changed by the specific terms of such agreement."

for no-grievance-strikes pledge from our most important public safety workers. The logic of such a two-tier regime would ultimately lead to the implication that fire fighters and police officers could lawfully strike over non-arbitrable grievances. It is inconceivable that the Legislature intended such a result.[20] It is equally unreasonable and unfair that the Legislature intended that fire fighters and police officers give up "something for nothing."

This Court has frequently recognized the FPAA's public policy "trade-off" between grievance arbitration and strike prohibitions. In *City of Yukon v. International Ass'n of Firefighters, Local 2055,* 792 P.2d 1176, 1179 (Okla.1990), we said that "[s]uch binding [grievance] arbitration is required by the State Fire and Police Arbitration Act, wherein the employees are denied by law the right to strike." The rationale for this policy choice was expressed more fully by this Court in *Stone v. Johnson,* 690 P.2d 459, 463 (Okla.1984):

"While the private employee who, when confronted with an impasse in negotiations or with an unfair labor practice committed during negotiations, has the option to strike, the firefighter or policeman is denied this option. In partial compensation for the denial of the traditional economic weapons of labor, the Firefighter's and Policemen's Arbitration Law provides a method of arbitration for issues unresolved by negotiation. To allow a municipal employer to force negotiations to an impasse by insistence on a proposal of, at best, questionable legal tenability, resulting in a process of arbitration, which is then not binding on the municipal authority would be to deny the right to engage in effective collective bargaining reserved to these public employees by 11 O.S.1981, Sec. 51–101(A). This strong policy of requiring absolute good faith in bargaining is necessary to counter-balance the absence of the

right to strike and the absence of the availability of binding arbitration."

■■ A party may not insist at the negotiating table upon terms which would modify statutory requirements for CBAs. We hold that the Firefighters and Policemen's Arbitration Law defines and determines the make-up of a collective bargaining unit and is not a proper subject for negotiation between the City and the bargaining agent for the firefighters.[21]

■■ We also hold that the entities covered by the FPAA violate their duty to bargain in good faith when they assert positions at the collective bargaining table which would, if accepted, require the other side to agree to terms contrary to those mandated by statute. This is consistent with our ruling in *Stone v. Johnson,* 690 P.2d 459, 460 (Okla.1984) and *Oliver v. City of Tulsa,* 654 P.2d 607, 612 (Okla.1982). We also recognize as applicable here, and as consistent with the public policy of the State of Oklahoma, the federal labor policy that the goals of labor peace embodied in the collective bargaining statutes cannot be met when one party is asked to agree to terms which are repugnant to the statute's specific language.

It is important to distinguish this decision from prior cases construing the role of grievance arbitration under the teacher negotiation statutes, 70 O.S.1991 §§ 509.1 et seq., as amended. In *Raines v. Independent School Dist. No. 6 of Craig County,* 796 P.2d 303 (Okla.1990) and *Mindemann v. Independent School Dist. No. 6,* 771 P.2d 996 (Okla.1989), this Court outlined limitations on grievance arbitration agreements between school districts and local teacher associations in areas of teacher discipline in which the Legislature had created very specific statutory procedures for dealing with those issues.

The *Raines* court construed *Mindemann* as recognizing two major limitations on a school board's ability to include certain terms in a collective bargaining agreement. First,

See also, 11 O.S.1985 Supp. § 51–101(D), in which the Legislature stated that "[t]he establishment of this method of arbitration ... shall be deemed to be a recognition solely of the necessity to provide some alternative procedure for setting disputes where employees *must, as a matter*

*of public policy,* be denied the usual right to strike." (Emphasis supplied.).

21. *Oliver v. City of Tulsa,* see note 4 at 612, supra; See also, *Stone v. Johnson,* see note 9, supra.

that a school board's managerial prerogative cannot be bargained away. Second, that a school board may not negotiate a term in a collective bargaining agreement which involves the delegation of a statutory duty or the surrender of discretion vested in the board by statute. Ultimately, those two limitations merge into one in the sense that it is the Legislative creation of certain specific statutory responsibilities in school districts which leads to the view that they are non-delegable—and that, as a matter of public policy, they must prevail over the more generalized statutory duty to bargain in good faith over items affecting the performance of professional services. There are several important distinctions between *Mindemann—Raines* and the FPAA:

1) The Legislature has not mandated grievance arbitration for school teachers. In fact, the statutes make no reference at all to grievance arbitration in teacher bargaining. In *Mindemann—Raines* the parties voluntarily chose this means of dispute resolution for themselves.

2) The Legislature has not mandated a detailed statutory procedure for the nonrenewal or discharge of firefighters as it has for teachers.

3) In teacher bargaining, the conflict to be resolved between statutes is between the detailed teacher dismissal statute and legislative silence on grievance arbitration. In effect it is a conflict between a teacher dismissal statute and the contractual preferences of the parties.

4) In firefighter bargaining, the conflict to be resolved is between an *unequivocal legislative mandate for grievance arbitration* and virtual legislative silence as to the procedures for discharging firefighters.

In *Mindemann–Raines,* there is considerable judicial dicta about "managerial prerogative." To the extent that it is applicable, it

is only insofar as there are constitutional or statutory indicia of such prerogatives.[22] In the absence of specific guidance in the Oklahoma Constitution, it is the Legislature, and not this Court, which is vested with responsibility for declaring the public policy of this state. When courts make public policy pronouncements, they are worthy of respect only when they are rooted in specific sources of law and not in the policy preferences of the judges who render them. [It is most ironic that the statute the Court used to defeat *contractual* grievance arbitration in *Mindemann–Raines* (70 O.S.1981 § 6–103.4, since repealed) is one section of what can only be described as a statutorily created arbitration process. The parties selected "hearing judges" from a list maintained by the State Department of Education and an APA-type hearing was held, with a right of appeal into district court. (See, 70 O.S.1981 §§ 6–103.5–103.13, since repealed.) ] However, it is abundantly clear that the mandatory arbitration procedures for firefighters and police officers are separate and distinct from the voluntary arbitration procedures for school teachers. *Mindemann* and *Raines* are inapplicable.

The wisdom and value of this legislative policy choice concerning firefighters and police officers has been tragically underlined by the sequelae to the April 19, 1995, bombing of the Murrah Federal Building. The idea of a work stoppage by rescue workers, for whatever reason, was simply unthinkable. The nation watched the heroics of firefighters and police officers from Oklahoma City and other communities as they placed their lives on the line around the clock. While this particular disaster was unique in our State's history, it helps us understand that civil society as we know it hinges on the availability of these uniformed officers every day, every hour, every minute, and every second to de-

**22.** See, *Pennsylvania Labor Relations Bd. v. State College Area School,* 461 Pa. 494, 337 A.2d 262, 269 (1975) (Negotiation over matters which may be considered prerogatives are only prevented if they would be in violation of or inconsistent of a statutory directive.). Other court which have considered the question of whether "managerial prerogatives" are beyond the scope of negotiations under collective bargaining statutes have

found that to the extent any matter is alleged to be of "inherent managerial policy," if it affects wages, hours and terms and conditions of employment, the public employer is required to negotiate over such matters. See generally, A not., "Bargainable or Negotiable Issues in State Public Employment Labor Relations," A.L.R.3d 242 (1978).

with the small and large disasters of our communities, whenever they might occur.

## II.

### TITLE 11 O.S.SUPP.1985 § 51–111 IS CONSTITUTIONAL.

■ Although we have previously considered the legal viability of arbitration agreements in a variety of contexts, those cases have generally involved circumstances in which parties have specified arbitration contractually as their preferred method of resolving future disputes. We have never been presented the issue posed so starkly here: Can the Legislature create a method for dispute resolution which mandates arbitration as its primary mechanism for addressing interpretive issues in collective bargaining agreements without running afoul of the Oklahoma Constitution? The presumptive answer, of course, is yes. Acts of the Legislature are constitutionally valid unless they are shown beyond a reasonable doubt to violate the Constitution.[23]

The City and the Oklahoma Municipal League contend that forcing parties who are negotiating a contract, under the threat of an unfair labor charge and criminal sanctions,[24] to agree to final and binding arbitration of every item of any contract negotiated under the Act, § 51–111 violates the Okla. Const. art. 2, §§ 6,[25] 7,[26] 19,[27] art. 5 § 46,[28] and art. 23 § 8.[29]

None of the decisional authority cited by the City for the position that mandatory grievance arbitration is unconstitutional addresses the underlying legislative facts in this case. Here, the Legislature has set out with striking clarity the requirements for resolving interpretive disputes over the terms of collective bargaining agreements between municipalities and their uniformed employees. It has also provided a public policy framework for the requirements imposed on municipalities to stabilize and ensure the continuous provision of essential services from the firefighters and police officers who work for them.

Were we to strike down this statute, for the reasons advanced by the City and the League, we would by implication jeopardize other significant legislative attempts to play an appropriate constitutional role in structuring the ground rules for adjudicating disputes in an increasingly litigious society.

23. *Earnest, Inc. v. LeGrand*, 621 P.2d 1148, 1152 (Okla.1980); *Board of Regents for Oklahoma Agric. & Mech. Colleges for & Behalf of Agric. & Applied Science v. Oklahoma State Regents for Higher Educ.*, 497 P.2d 1062, 1068 (Okla.1972); *Schmitt v. Hunt*, 359 P.2d 198, 200 (Okla.1960).

24. See, 11 O.S.1981 § 51–102, which subjects both corporate authorities and bargaining agents to unfair labor charges for refusing to bargain collectively or discuss grievances in good faith. See also, 11 O.S.1981 § 51–113 which provides criminal penalties and fines for striking, engaging in work stoppages, or failing to bargain in good faith. Although it appears that dozens of unfair labor practice charges have been brought to the PERB, we are not cited to any instances in which criminal penalties have been sought or imposed for the violation of duties imposed by the FPAA. It is reasonable to infer that the threat of criminal sanctions under the FPAA is theoretical at best.

25. The Okla. Const. art. 2, § 6 provides:

"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice."

26. The Okla. Const. art 2, § 7, provides:

"No person shall be deprived of life, liberty, or property, without due process of law."

27. The Okla. Const. art 2, § 19 provides in pertinent part:

"The right of trial by jury shall be and remain inviolate ..."

28. The Okla. Const. art. 5, § 46, provides in pertinent part:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: ...
Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justice of the peace, sheriffs, commissioners, arbitrator, or other tribunals....
For limitation of civil or criminal actions ...
Providing for a change of venue in civil and criminal cases."

29. The Okla. Const. art. 23, § 8 provides:

"Any provision of a contract, express or implied, made by any person, by which any of the benefits of the Constitution is sought to be waived, shall be null and void."

The Governmental Tort Claims Act[30], Part II of the Administrative Procedures Act[31], and the Workers' Compensation Act[32] are but three of the most visible and comprehensive instances in which the Legislature has recognized the need for specialized adjudicative and quasi-adjudicative regimes to shape the pre-litigation behavior of participants in the legal system. These "streamlining" systems inevitably, and by design, place some limitations on would-be litigants. The courts have traditionally viewed these regimes as constitutionally valid structures with an appropriate role to play in regulating and accommodating the changing needs of modern society and in conserving and focusing judicial resources. The courts have traditionally accorded these procedures varying degrees of deference in reviewing their results.[33]

We conclude that 11 O.S.Supp.1985 § 51-111 does not violate the Oklahoma Constitution in the ways alleged by the City for several reasons. Most important of these is the special recognition given arbitration in general and labor arbitration in particular by the Oklahoma Constitution itself. The drafters of the Oklahoma Constitution embraced arbitration in three separate articles: art. 5, § 46,[34] art. 6 § 21,[35] and art. 9 § 42.[36] Had art. 23, § 8 been intended to preclude agreements to submit controversies to arbitration, the framers of the Oklahoma Constitution could have prohibited arbitration once and for all. Instead of forbidding it, they included it in the Constitution three times, once in the context of requiring arbitration as a means of settling labor disputes in particular industries. It is thus difficult for us to accept the proposition that the Oklahoma Constitution must be construed to prohibit that which it has included. The framers, at a minimum, did not preclude legislatively-mandated grievance arbitration. We may not do so by judicial fiat.

 Turning to the specific constitutional defects asserted we find the statute constitutional for the following reasons: 1) the Okla. Const. art 23, § 8 does not preclude

**30.** Title 51 O.S.1991 §§ 151 et seq., as amended.

**31.** Title 75 O.S.1991 §§ 308 et seq., as amended.

**32.** Title 85 O.S.1991 §§ 1 et seq., as amended.

**33.** We discussed the standard of review for grievance arbitration awards in *City of Muskogee v. Martin*, see note 11, supra. In that case, we reviewed an arbitration agreement in a collective bargaining agreement to determine if a particular dispute was subject to arbitration procedures under the agreement. We recognized that, although the arbitrator's decision is final and binding on the parties, courts have the authority to determine if a dispute is arbitrable under an agreement. *Martin* encompasses the law as we viewed it in *Voss v. City of Oklahoma City*, see note 15, supra; and *City of Yukon v. International Ass'n of Firefighters Local 2055*, 792 P.2d 1176 (Okla.1990).

In *Voss*, we noted that an agreement for the submission of an issue to impartial arbitrators is a prerequisite for a valid arbitration agreement. Judicial review of a valid arbitration agreement is limited to a determination of whether the grievance alleged is covered by the agreement or to determine if the arbitrator acted within the authority granted by the agreement. If the arbitration clause is broad enough to include the alleged dispute, arbitration must be ordered. If the arbitrator's award is within the submission and authority established by the contract, the award will be enforced. The courts will not vary an arbitration award which is contested on the

merits of the controversy submitted to the arbitrator or on the sufficiency of the evidence on which the arbitrator based its decision. In *City of Yukon v. International Ass'n of Firefighters Local 2055*, supra this note, this Court, relying on its prior decision in *Garner v. City of Tulsa*, 651 P.2d 1325 (Okla.1982), permitting the arbitrator to refer to statutes outside the FPAA to construe ambiguities in the CBA, held that: (1) the arbitrator did not improperly change or modify collective bargaining agreement when he referred to a prior arbitration order in interpreting agreement's 56-hour workweek provision; and (2) arbitrator did not exceed his authority under collective bargaining agreement when he looked toward previous arbitration award which addressed Fair Labor Standards Act.

**34.** The Okla. Const. art. 5, § 46, see note 28, supra.

**35.** The Okla. Const. art. 6, § 21 provides:

"The Legislature shall create a Board of Arbitration and Conciliation in the Department of Labor and the Commissioner of Labor shall be ex-officio chairman."

**36.** The Okla. Const. art. 9, § 42 provides:

"Every license issued or charter granted to a mining or public service corporation, foreign or domestic, shall contain a stipulation that such corporation will submit any difference it may have with employees in reference to labor, to arbitration, as shall be provided by law."

such arbitration agreements.[37] Although we have not previously confronted the effect of this section on such arbitration agreements, we do not believe that it was intended nor should be construed to preclude them because: 1) the common law of England,[38] as it existed at statehood, allowed arbitration and it was incorporated into Oklahoma law. See, 12 O.S.1991 § 2 and 25 O.S.1991 § 29. See also, *Scott v. Avery*, All E.R. 1, 7 (1856); 2) there is not a denial of access to court which is prohibited under the Okla. Const. art. 2, § 6 [39] because parties may seek court review of the arbitration agreement or award to determine if the dispute was arbitrable under the agreement or whether the arbitrator exceeded the authority of the agreement; and 3) the right to a jury trial guaranteed by the Okla. Const. art. 2, § 19,[40] is waivable and not all disputes between the parties are required to be resolved by a jury—the right to a jury trial depends on the nature of the dispute.

For almost two decades we have found grievance arbitration to be an appropriate substitute for the litigation of issues covered in the collective bargaining agreement. In 1980, we held that the grievance arbitration is an exclusive remedy for rights conferred by the CBA and that the bargaining agent can waive the rights of individuals covered by the CBA to sue. In *Voss v. City of Oklahoma City*, 618 P.2d 925, 929 (Okla.1980), this Court recognized that the Union waived the rights of the employee to proceed in district court by the adoption of express language in the grievance arbitration clause of the collective bargaining agreement.

▮▮▮▮▮ Special laws prohibited by the Okla. Const. art. 5, § 46 [41] are those which do not have a uniform operation and which apply to less than the whole of a class of persons, entities or things standing upon the same footing or in substantially the same situation or circumstances.[42] The requirements of 11 O.S.Supp. § 51–111 [43] are not violative of § 46 because it operates and applies equally to all cities and fire fighters who engage in collective bargaining.[44]

**37.** The Okla. Const. art. 23, § 8, see note 29, supra.

**38.** The ancient English court initially refused to enforce arbitration agreements. The premise for their refusal was not based on the sound reasoning of contract enforcement principles. Rather it was based on English courts fight " 'for extension of jurisdiction—all of them being opposed to anything that would altogether deprive every one of them of jurisdiction.' " *Allied–Bruce Terminix Co., Inc. v. Dobson*, —— U.S. ——, ——, 115 S.Ct. 834, 838, 130 L.Ed.2d 753, 762 (1995) (Citations omitted.).

**39.** The Okla. Const. art. 2, § 6, see note 25, supra.

**40.** The Okla. Const. art. 2, § 19, see note 27, supra.

**41.** The Okla. Const. art. 5, § 46, see note 28, supra.

**42.** *State v. Goforth*, 772 P.2d 911, 914 (Okla. 1989); *Reynolds v. Porter*, 760 P.2d 816, 822–23 (Okla.1988); *Maule v. Independent School Dist. No. 9*, 714 P.2d 198, 203–04 (Okla.1985); *Oklahoma City v. Griffin*, 403 P.2d 463, 465 (Okla. 1965); *Fenimore v. Oklahoma ex rel. Comm'rs of Land Office*, 200 Okla. 400, 194 P.2d 852, 854 (Okla.1948).

**43.** Title 11 O.S.Supp.1985 § 51–111, see note 2, supra.

**44.** Bethany's argument that 11 O.S.Supp.1985 § 51–111, see note 2, supra, is a special law is unpersuasive because the Okla. Const. art. 5, § 46, see note 28, supra, requires a uniform operation to class of persons, entities or things standing upon the same footing or in substantially the same situation or circumstances. Here, § 51–111 applies uniformly to similarly situated cities and fire fighters who collectively bargain and enter into collective bargaining agreements. The question of whether the prohibition from striking violates the constitution is not before us. The City also raises constitutional challenges under due process, Okla. Const. art. 2, § 7, see note 26, supra. The question of whether parties are denied due process does not arise until a dispute arises under an executed agreement and a party either attempts to enforce the arbitration clause of the agreement or to utilize the statutory arbitration procedures. Here, a dispute over an executed agreement never arose because the parties had not yet reached an agreement when negotiations halted. Whether the parties to a collective bargaining agreement are denied due process by § 51–111 is premature under the present case. However, we note that research does not reveal a case in which a federal court has found grievance arbitration unconstitutional on due process grounds. The due process clause of the Oklahoma Constitution has a definitional sweep that is coextensive with its federal counterpart. See, *DuLaney v. Oklahoma State Dept. of Health*, 868 P.2d 676, 684–85 (Okla.1993).

## CONCLUSION

The legislative command that public safety workers and their municipal employers submit their contract interpretation disputes to binding arbitration is enforceable and binding on the parties. Title 11 O.S.1981 § 51-111 providing for mandatory grievance arbitration is constitutional. It is an unfair labor practice for a party to insist at the bargaining table that the other party accept proposals to remove certain matters, otherwise a part of the collective bargaining agreement, from the reach of grievance arbitration. To rule otherwise would be to undermine the public policy compromises the Legislature has crafted and, ultimately, would reduce grievance arbitration to a nullity. The rulings of the PERB and the District Court are **AFFIRMED.**

ALMA WILSON, C.J., and HODGES, SIMMS and SUMMERS JJ., concur.

LAVENDER, HARGRAVE and WATT, JJ., dissent.