Dear Senator Paul Gumm,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Does the County Bridge and Road Improvement Act, 69 O.S. 2001 Supp. 2004, §§ 657 through 665 and 689, allow the County Bridge and Road Improvement Fund to be used for any cost or expense for administration and program management of a circuit engineering district established pursuant to 69 O.S. 2001, § 687.1[69-687.1]?
 The County Bridge and Road Improvement Act
¶ 1 In 1980 the Oklahoma Legislature established the County Bridge Improvement Act. See 1980 Okla. Sess. Laws ch. 307, §§ 1-7 (codified at 69 O.S. Supp. 1980, §§ 657-663). The Legislature also "created in the State Treasury a special fund to be designated as the `County Bridge Improvement Fund'." 1980 Okla. Sess. Laws ch. 349, § 13 (codified at 69 O.S. Supp. 1980,§ 664[69-664]). The "fund shall consist of monies, if any, which have accrued to the State General Revenue Fund at the close of the fiscal years ending June 30, 1980, June 30, 1981, June 30, 1982 and June 30, 1983, in excess of the amounts required to satisfy all appropriations made from the State General Revenue Fund for the then current fiscal year together with all other statutory obligations." Id. The Legislature provided that "[r]evenues to [the] fund shall be expended only pursuant to legislative appropriation for implementation of the County Bridge Improvement Act." Id.
¶ 2 Five years later, the Legislature established the County Road Improvement Act. See 1985 Okla. Sess. Laws ch. 351, §§ 19-24 (codified at 69 O.S. Supp. 1985, §§ 685-690). A revolving fund to be designated the "County Road Improvement Revolving Fund" was created in the State Treasury to be expended for the purposes set forth in the County Road Improvement Act. Id. § 24 (codified at 69 O.S. Supp. 1985, § 690[69-690]). Monies from various sources were deposited into the County Road Improvement Revolving Fund. Id. §§ 14(D), 15(D), 16(D), 17(D), 18(D).
¶ 3 In 1997 the Legislature amended the statutes to create one act known as the County Bridge and Road Improvement Act ("CBRI Act"). See 1997 Okla. Sess. Laws ch. 284, §§ 18-26 (current version at 69 O.S. 2001 Supp. 2004, §§ 657-665, 689). Section 687.1 of Title 69 governing circuit engineering districts which had been previously enacted in 1992 (see 1992 Okla. Sess. Laws ch. 80, § 12) was not included as part of the CBRI Act. See
1997 Okla. Sess. Laws ch. 284, §§ 18-26.
¶ 4 The expressed legislative intent of the CBRI Act "is to replace or reconstruct structurally obsolete bridges and roads on the county collector system" but the Legislature has recognized that "specific conditions may exist in a county justifying the need to reconstruct or replace a bridge or a road on a road section not included in the county collector system." 69 O.S.Supp. 2004, § 661[69-661](A) (original version at 1997 Okla. Sess. Laws ch. 284, § 22). The Legislature has vested the administration of the provisions of the CBRI Act with the county road branch of the Oklahoma Department of Transportation ("ODOT"). 69 O.S. 2001, §658[69-658](A).
¶ 5 At the same time the Legislature implemented the CBRI Act, the Legislature established the County Bridge and Road Improvement Fund ("CBRI Fund"). See 1997 Okla. Sess. Laws ch. 284, § 24 (current version at 69 O.S. 2001, § 664[69-664].) The Legislature provided that revenues to the fund were to be "expended only pursuant to legislative appropriation for implementation of the [CBRI Act] as set forth in the [CBRI Act.]"Id. In establishing the CBRI Act, the Legislature provided that if any county had accrued funds in the County Road Improvement Fund the county could deposit those excess funds in the county highway fund of the county or in the CBRI Fund to be used for the purposes set forth in the CBRI Act. See 1997 Okla. Sess. Laws ch. 284, § 1(C)(2) (amending 68 O.S. Supp. 1996, § 500.6[68-500.6]). The Legislature amended this legislation in 1998, adding a provision that funds from the County Bridge Improvement Fund could, at the option of the county, be deposited in the county highway fund or the CBRI Fund to be used for the purposes set forth in the CBRI Act. See 1998 Okla. Sess. Laws ch. 405, § 3(C)(2) (current version at 68 O.S. Supp. 2004, § 500.6[68-500.6](C)(2)).
 Establishment of Circuit Engineering Districts
¶ 6 In 1992 the Legislature authorized the counties to create circuit engineering districts. See 1992 Okla. Sess. Laws ch. 80, § 12(A) (codified at 69 O.S. Supp. 1992, § 687.1[69-687.1](A)). This legislation was not designated as part of any other act and was enacted prior to enactment of the CBRI Act in 1997. Originally, the circuit engineering districts were to be created by the board of county commissioners of any county with any other county or counties to assist the counties in carrying out the day-to-day operations of road maintenance, construction and inspection.Id. Under the enacting legislation, a board of directors governed the district, established a budget and determined the obligations and priorities for the operation of the district.See 1992 Okla. Sess. Laws ch. 80, § 12(C) (codified at 69 O.S.Supp. 1992, § 687.1[69-687.1](C)).
¶ 7 In 1998 the Legislature amended Section 687.1 to specifically define the objectives and authority of the circuit engineering districts. See 1998 Okla. Sess. Laws ch. 94, § 1 (current version at 69 O.S. 2001, § 687.1[69-687.1]). In addition to the authority to assist counties with regard to road maintenance, construction, inspection, and equipment purchases and management, the Legislature gave the circuit engineering districts authority in a number of broad areas not falling within the purview of the CBRI Act. See id.
¶ 8 The first objective of the circuit engineering districts is:
 A. 1. To allow county governments to make the most efficient use of their powers by enabling them to cooperate with each other and other units of government on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population and other factors influencing the needs and development of county government[.]
69 O.S. 2001, § 687.1[69-687.1].
¶ 9 Other objectives include such broad functions as:
 2. To provide research and research support to county government;
 3. To provide assistance to county governments in performing the functions delegated by law including, but not limited to, the operation of road maintenance, construction, inspection, and equipment purchases and management;
 4. To conduct public discussion groups, forums, panels, lectures, and other similar programs;
5. To present courses of instruction and education;
 6. To obtain, develop and present scientific and all other types of information relative to the operation of the public transportation system in this state;
 7. For long-range planning and growth of the transportation system within the circuit engineering district and other circuit engineering districts within this state; and
 8. To provide services to counties in a coordinated manner that will improve the quality of the transportation system and be cost effective.
Id.
¶ 10 The authority of the districts is specifically set forth in the 1998 amendment and includes "comply[ing] with and carry[ing] out the provisions of the Interlocal Cooperation Act; . . . advis[ing] and assist[ing] its members with how to implement and make an effective transportation plan"; preparing programs of research to carry out its purposes; contracting for services; providing periodic reports for the district or its members; acquiring and holding property; receiving gifts, contributions and donations; "assess[ing] its members for the services rendered"; applying for, contracting for, administering, receiving and expending funds or grants; and publishing studies. 1998 Okla. Sess. Laws ch. 94, § 1(B) (current version at 69 O.S.2001, § 687.1[69-687.1](B)).
¶ 11 In 1998 the Legislature also gave circuit engineering districts a number of specific functions including forming trusts, conducting an independent audit and pooling purchasing of supplies and equipment pursuant to rules, forms and procedures developed by the State Auditor and Inspector. See 1998 Okla. Sess Laws ch. 94, § 1(C)-(H), (current version at 69 O.S. 2001,§ 687.1[69-687.1](C)-(H)). In 2001 the Legislature gave circuit engineering districts the authority to participate in the County Road Machinery and Equipment Revolving Fund. See 2001 Okla. Sess. Laws ch. 117, § 3(I) (codified at 69 O.S. 2001, §687.1(I)). The Legislature also authorized circuit engineering districts to organize a statewide board consisting of the chairpersons elected by each of their respective circuit engineering districts. Id. § 687.1(J). The statewide board is authorized to conduct business and coordinate activities as determined by members of the district. Id.
¶ 12 While one objective of the circuit engineering districts is to provide assistance to counties in "performing the functions delegated by law including, but not limited to, the operation of road maintenance, construction, inspection, and equipment purchases and management[,]" (id. § 687.1(A)(3)), the circuit engineering districts were not given specific authority to implement the purposes of the CBRI Act by replacing or reconstructing obsolete bridges and roads. As seen by Section 687.1, the objectives and authority of circuit engineering districts are much broader than the objectives of the CBRI Act.
 Expenditures Allowed From the CBRI Fund
¶ 13 Throughout the CBRI Act, the Legislature has established a number of restrictions and requirements for the expenditure of CBRI funds. In Section 660(B) of Title 69, the Legislature provided that CBRI funds may be used "to pay the cost of county bridge inspections, classifications, and evaluations, and county road inspections, classifications, and evaluations for federal and state purposes and to match federal or state funds, provided the applicable federal or state funds are available."Id.
Section 661(A) authorizes monies received by counties pursuant to the CBRI Act to be used for "[r]ight-of-way acquisition and utility relocation" in the replacement and reconstruction of structurally obsolete bridges and roads. Id.
¶ 14 When a county receives monies pursuant to the CBRI Act, it is required to "give priority to reconstructing, replacing, or closing those bridges in the county that are rated less than three (3) tons or fifteen (15) tons or less for those bridges on school bus routes." Id. § 661(B). Each county is to submit a plan to ODOT to reconstruct, replace, or close these types of bridges. Id. Bridge and road replacement or reconstruction projects are to be selected by the individual boards of county commissioners with the concurrence of ODOT, and are to be "based on a countywide assessment of bridge and road reconstruction and replacement needs." Id.
¶ 15 Title 69 O.S. 2001, § 662[69-662](A) governs the award of projects for bridges and provides that funds are to be used for payment of projects "awarded to contractors by the State Transportation Commission or by other federal or state agencies under their normal competitive bidding procedures, excluding prequalification of bidders." Id. Before a county receives payment, ODOT must "certify to the State Transportation Commission that [the] county has upheld all agreements with, and obligations to, [the] state." Id. § 665.
¶ 16 Engineering services are specifically mentioned in the CBRI Act in Section 659. There the Legislature has provided that engineering for projects authorized pursuant to the CBRI Act may be provided by ODOT at the request of a county and the costs to ODOT may be charged to the project. Id. The county also has the option of obtaining engineering services through monies received by the county pursuant to the CBRI Act. Id. In such cases, only registered professional engineers approved by ODOT who are experienced in the design and construction of highways and related facilities may be used to provide engineering services.Id.
¶ 17 In implementing the CBRI Act in 1997, the Legislature amended Section 665 to specifically articulate expenditures which may be allowed pursuant to the provisions of the CBRI Act. See
1997 Okla. Sess. Laws ch. 284, § 25. In addition to other amendments, Section 665(C)(5) was added to include the following expenditure:
 Any cost or expense for administration, program management, engineering, including the development of appropriate local road standards which shall apply only to those roads reconstructed, maintained, or otherwise constructed pursuant to this act, or construction supervision necessarily incurred by the Department of Transportation in fulfilling its duties and responsibilities pursuant to this act[.]
Id. (emphasis added).
¶ 18 This amendment is the source of your question. You ask whether CBRI funds may be used for any cost of administration and program management of a circuit engineering district. In essence, you ask whether Section 665(C)(5) authorizes CBRI funds to be used for general support of a circuit engineering district.
¶ 19 An analysis of your question involves an interpretation of the language of the CBRI Act as a whole in light of its general purpose. "The primary goal of statutory construction is to determine legislative intent. That intent is to be ascertained from the statute in light of its general purpose and object."TXO Prod. Corp. v. Okla. Corp. Comm'n, 829 P.2d 964, 968-69
(Okla. 1992) (footnote omitted). Intent is to be ascertained from reviewing the act as a whole. City of Bethany v. Pub. EmployeesRel. Bd., 904 P.2d 604, 609 (Okla. 1995).
¶ 20 Review of the language of Section 665(C)(5) in light of the CBRI Act as a whole demonstrates that the statute does not authorize payment of the costs or expenses of administration or program management of a circuit engineering district from CBRI funds. The statute refers to costs, which "apply only to those roads reconstructed, maintained or otherwise constructedpursuant to [the CBRI Act]" and focuses on fulfilling the duties and responsibilities pursuant to the CBRI Act. Id.
(emphasis added).As discussed above, circuit engineering districts have authority broader than replacing and reconstructing obsolete bridges and roads. For instance, pursuant to subsections A and B of Section 687.1, a circuit engineering district may provide research and research support to county governments, conduct public discussion groups, forums, panels, lectures, and other similar programs and obtain, develop and present scientific and other types of information relative to the operation of the public transportation system in this State. These and other objectives of a circuit engineering district are not related to the replacement or reconstruction of bridges and roads. As the stated purpose of the CBRI Act is to replace or reconstruct structurally obsolete roads and bridges, CBRI funds are to be used for this purpose only, not the administration or management of a circuit engineering district with powers broader than that necessary to implement the CBRI Act.
¶ 21 Other statutes outside the CBRI Act limit the use of CBRI funds to the purposes set forth in the CBRI Act. Title 68 O.S.2001, § 707.1[68-707.1], governing excise taxes on the use of special fuel, provides that a portion of the tax together with any interest and penalties "shall be deposited in the [CBRI Fund] of the State Treasury to be used for the purposes set forth in the[CBRI Act.] Id. (emphasis added). Other statutes dealing with the apportionment of tax on gasoline and diesel limit using funds deposited into the CBRI Fund for the purposes set forth in theCBRI Act. 68 O.S. 2001, Supp. 2004, §§ 500.6(C)(2); 500.7.
¶ 22 The term "circuit engineer" is used in the section governing the expenditure of CBRI funds in Section 665(C)(7). That section states that CBRI funds may be used for:
 The expense and related costs of employing an engineer to assist a county or counties in carrying out the daily operations of road and bridge maintenance and construction, including the employment of a circuit engineer.
Id.
¶ 23 This section refers to a circuit engineer rather than acircuit engineering district and limits payment to "expense and related costs." Id. As such, while it authorizes payment of a circuit engineer, it does not serve as authority for the payment of administration or program management costs of a circuit engineering district as established by Section 687.1.
¶ 24 The rules of ODOT, as set forth in the Oklahoma Administrative Code, lend further support to this position. Rule OAC: 730:10-7-4 lists the purposes for which CBRI funds may be used. Subsection 10 provides that funds may be used for "[t]he expense and related costs of employing an engineer to assist a county or counties in carrying out the day-to-day operations of road maintenance and construction, including the employment of a circuit engineer pursuant to the provisions of the County Bridge and Road Improvement Act." The payment is directly linked to the expense and related costs of employing a circuit engineer and does not include administration and program management for acircuit engineering district as established in Section 687.1.
¶ 25 Engineering contracts are also discussed at Section 665(B), where the Legislature has provided that all consulting engineering contracts for services referred to in the CBRI Act are to be approved by ODOT, "except those contracts entered into pursuant to the provisions of Section 687.1," dealing with circuit engineering districts. Id. Again, no authorization is provided for payment of administrative costs of a circuit engineering district. Rather, payment is limited to contracts for services referred to in the CBRI Act.
¶ 26 The term "Circuit Engineering District" appears again in the Legislature's 1998 amendment to the CBRI Act permitting counties to request reimbursement of expenses for the construction of force account bridges from the CBRI Fund. See
1998 Okla. Sess. Laws ch. 29, § 1(D(1)) (current version at 69O.S. 2001, § 662[69-662](D)). The Legislature has established certain criteria for reimbursement from the CBRI Fund for county force account bridges and has provided that monies from the CBRI Fund may be used to "establish minimum standards for guardrail applications on low-traffic-volume county roads." Id. § 662(E). Section 662(F) of the CBRI Act provides that "[p]rior to construction of [a] bridge, a county may request that construction supervision be provided by the Circuit Engineering District of which the county is a member to ensure quality control and quality assurance." Id. This provision specifically authorizes the assistance of a circuit engineering district, but does not authorize payment of administrative or program management costs.
¶ 27 A specific provision in the Oklahoma Administrative Code references engineering performed by circuit engineering districts. Section OAC: 730:10-7-13 provides that "[p]lans, surveys and engineering shall be the responsibility of the county in which the project is located[.]" Reasonable costs for these items shall be eligible for funding which has accrued to the requesting county's account under this program. With prior approval from ODOT, circuit engineering districts may perform the construction engineering on projects funded with CBRI funds and the costs shall be chargeable against the project. By this language, it is clear that only the specific costs incurred by a circuit engineering district for specific projects may be paid with CBRI funds.
¶ 28 As seen by a review of the CBRI Act, the Legislature has over the years amended the CBRI Act to clarify the functions for which the CBRI Fund may be used. The Legislature has not, however, extended the CBRI Fund beyond the purposes set forth in the CBRI Act. If the Legislature had intended for the CBRI Fund to be used to pay administrative costs and expenses of a circuit engineering district, it could have specifically said so either in the statutes creating the CBRI Act or in the statutes authorizing the creation of circuit engineering districts. Instead, the Legislature made it clear that CBRI funds are to be expended only for costs and expenses incurred in implementing the CBRI Act. While the legislative intent is clear from a review of the statutes, it is even more clear by the Legislature's silence in not specifically authorizing payment of costs or expenses of administration or program management of a circuit engineer district. "[L]egislative silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent." Ethics Comm'n v. Keating, 958 P.2d 1250, 1256 (Okla. 1998).
¶ 29 This conclusion is consistent with the intent of the Legislature in establishing the CBRI Fund as the Legislature has established that revenues to the CBRI Fund are to be expended only for implementation of the CBRI Act. 69 O.S. 2001, § 664[69-664].
As discussed, circuit engineering districts have authority in areas which do not fall within the CBRI Act, and circuit engineering districts serve a broader function than that for which the CBRI Act was created. As such, it would be inconsistent with legislative intent to allow administration and program management costs of circuit engineering districts to be paid with CBRI funds, which must be used only for implementing the provisions of the CBRI Act.
¶ 30 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The express intent of the Legislature in creating the County Bridge and Road Improvement Act ("CBRI Act") was to replace or reconstruct structurally obsolete bridges and roads. See 1997 Okla. Sess. Laws ch. 284, § 22(A) (current version at 69 O.S. Supp. 2004, § 661(A)).
 2. In the legislation implementing the CBRI Act, the Legislature created a fund to be designated as the County Bridge and Road Improvement Fund ("CBRI Fund"). See 1997 Okla. Sess. Laws ch. 284, § 24 (current version at 69 O.S. 2001, § 664[69-664]). The CBRI Act sets forth the specific expenditures to be made from the CBRI Fund and provides that revenues to the CBRI Fund may be "expended only pursuant to legislative appropriation for implementation of the [CBRI] Act." 69 O.S. 2001 § 664[69-664].
 3. Title 69 O.S. 2001, § 665(C)(5) authorizes expenditure of CBRI funds for "[a]ny cost or expense for administration, program management, engineering, including the development of appropriate local road standards which shall apply only to those roads reconstructed, maintained, or otherwise constructed pursuant to this act, or construction supervision necessarily incurred by the Department of Transportation in fulfilling its duties and responsibilities pursuant to this act [.]" Id. (emphasis added). This provision limits expenditures from the CBRI Fund to costs or expenses incurred for implementation of the CBRI Act.
 4. In 1992, the Legislature authorized counties to create circuit engineering districts to allow counties to join together to provide services such as research and research support to county government, providing assistance to county government in the operation of road maintenance, construction, inspection and equipment purchases and management, instructing and educating and long-range planning and growth of the transportation system. See 1992 Okla. Sess. Laws ch. 80, § 12 (current version at 69 O.S. 2001, § 687.1(A)). The statute authorizing creation of circuit engineering districts is not a part of the CBRI Act. See 69 O.S. 2001 Supp. 2004, §§ 657-665, 689. Circuit engineering districts have broader authority than necessary for implementation of the CBRI Act, and it would be inconsistent with legislative intent in establishing the CBRI Fund to allow CBRI funds to be used for administrative and program management costs of a circuit engineering district.
 5. Title 69 O.S. 2001, § 665(C)(7) authorizes the CBRI Fund to be used for "[t]he expense and related costs of employing an engineer to assist a county or counties in carrying out the daily operations of road and bridge maintenance and construction, including the employment of a circuit engineer." This section authorizes payment of costs and expenses of employing a circuit engineer, but does not authorize the payment of administration or program management costs of a circuit engineering district.
 6. Through various amendments, the Legislature has clarified the functions for which the CBRI Fund may be used, but has not authorized expenditures of the CBRI Fund beyond the stated purpose of the CBRI Act. The Legislature's silence, when it has the authority to speak, is an implication of legislative intent that the CBRI Fund is not to be used to pay administrative or program management costs or expenses of a circuit engineering district. Ethics Comm'n v. Keating, 958 P.2d 1250, 1256 (Okla. 1998).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 SANDRA D. RINEHART Senior Assistant Attorney General